Eugene J. McCARTHY et al., Plaintiffs,

v.

James C. KIRKPATRICK, Secretary of State of Missouri, Defendant.

No. 76 CV–162–C.

United States District Court, W. D. Missouri, C. D.

Sept. 24, 1976.

Robert M. Sears, Rosecan, Popkin & Chervitz, St. Louis, Mo., Arthur A. Benson, II, Kansas City, Mo., for plaintiffs.

D. Brook Bartlett, Asst. Atty. Gen., Jefferson City, Mo., for defendant.

## FINDINGS AND OPINION

ELMO B. HUNTER, District Judge.

Plaintiff Eugene J. McCarthy, an announced, independent candidate for President of the United States in the election to be held on November 2, 1976, is attempting to appear on the ballot in Missouri as an independent unaffiliated candidate.[1] Plaintiffs Gregory J. Mancuso and Kenneth W. Paul are registered, qualified voters and residents of the State of Missouri who seek to have their names placed on file as presidential electors for plaintiff McCarthy in the November general election. Plaintiffs Travis A. Rogers and Jennifer H. Harned are registered, qualified voters of Missouri who have actively supported the candidacy of plaintiff McCarthy by circulating nominating petitions for his candidacy and who wish to vote for him for President of the United States in the November general election. Defendant James C. Kirkpatrick is the duly elected Secretary of State of the State of Missouri whose duties include verifying nominating petitions of independent candidates and certifying the names of candidates for inclusion on the general election ballot to be submitted to the voters on November 2, 1976.

The Missouri statutes create three methods for nomination of candidates for President of the United States to appear on the ballot at the November general election. An "established political party," which polled for its candidate for governor more than two per cent of the entire vote cast for governor in the state at the last general election, § 120.140.2, R.S.Mo.Supp.1975, may nominate its candidate, whose name shall be placed upon ballots as provided by law. § 120.150, R.S.Mo.Supp.1975. The statutes make no apparent limitation upon the time by which established parties must certify their candidates for President to the Secretary of State, so long as adequate time remains for preparation and circulation of ballots.[2]

---

1. Plaintiff McCarthy is making similar attempts in all 50 states. By September 1, 1976, according to counsel for plaintiffs, he had complied with petition requirements in 12 states.

2. Established party candidates for most other offices in Missouri are nominated by primary election. § 120.300, R.S.Mo.Supp.1975. Party primaries are held on the first Tuesday after the first Monday in August. § 120.310, R.S. Mo.Supp.1975. In 1976, the primary election was held on August 3. Petitions are not required of persons desiring to appear on the ballot in party primaries; rather, a candidate must file a verified "written declaration of candidacy," § 120.340.1, R.S.Mo.Supp.1975, by the last Tuesday in April preceding the primary election.

Candidates of political parties whose candidate for governor did not receive more than two per cent of the votes cast for governor at the last general election may appear on the ballot as candidates of a new political party by gathering signatures on nominating . petitions, § 120.160, R.S.Mo. Supp.1975. The new party must submit its nominating petitions no later than July 31 preceding the general election. The petitions must be signed by a number of registered voters in each of the state's congressional districts which is equal to at least 1% of the total number of votes cast in the district for governor at the last gubernatorial election, or by a number of qualified voters in each of one-half of the congressional districts which is equal to at least 2% of the total number of votes cast in those districts for governor at the last gubernatorial election. § 120.160.3 and .6, R.S.Mo. Supp.1975.

Independent candidates may be nominated by filing a nominating petition which complies with substantially the same requirements applied to a new political party. However, the independent candidate must submit his nominating petition on or before the last Tuesday in April preceding the general election, the same date fixed for filing a declaration of candidacy in a party primary. § 120.240.1 and § 120.340.1, R.S. Mo.Supp.1975. In 1976, the filing deadline in Missouri was 188 days before the general election.[3]

While the Missouri statutes provide for the nomination of independent candidates for President of the United States, the statutes contain no provision specifically permitting the name of the independent candidate for President to appear on the ballot. See § 111.351, R.S.Mo.Supp.1975. The statute provides that a vote for a candidate of a political party shall be a vote for the electors of the party by which such candidates were named and whose names have been filed with the Secretary of State.

§ 111.351.2, R.S.Mo.Supp.1975. No corresponding provision is made concerning the electors of independent candidates.

The facts which give rise to this litigation, and to which the parties have stipulated, are as follows:

On February 23, 1976, the McCarthy campaign was notified by letter from Eula Huss, Chief Clerk, Office of the Missouri Secretary of State, that a nominating petition for an independent candidate for President of the United .States must be submitted no later than 5:00 p. m. on July 31, 1976. On July 27, 1976, the Attorney General of Missouri issued an Opinion Letter stating that the filing deadline for independent candidates' nominating petitions was April 27, 1976, and statewide news media thereafter reported the Attorney General's interpretation of the state's election law.

On July 31, 1976, representatives of plaintiff McCarthy submitted to defendant Kirkpatrick a nominating petition which purported to nominate plaintiff McCarthy as an independent candidate for President of the United States at the November 2, 1976, general election, and plaintiffs Mancuso and Paul, among others, as electors for plaintiff McCarthy at the general election. Defendant Kirkpatrick refused to take possession of the proffered petition, to verify the signatures thereon, or in any other manner to commence to certify the candidacy of the persons named on the petition, basing his refusal upon the Attorney General's Opinion of July 27, 1976. Defendant Kirkpatrick further advised plaintiff McCarthy, in reliance upon the opinion of the Attorney General of Missouri, that the Missouri election laws make no provision for placing the names of independent candidates for President of the United States upon the general election ballot so that a vote for the independent candidate would stand, as it does for party candidates, as a vote for his presidential electors.

---

**3.** Defendant Kirkpatrick contends that independent candidates also may qualify for the ballot in Missouri by filing a declaration of candidacy, as do party candidates, and participating in a primary election for independent

candidates. This position is not clearly supported by the statute, however, and the facts indicate that not even the Secretary of State on April 27, 1976, believed this alternate avenue to be available. See § 120.180, R.S.Mo.1969.

After the July 31 tender and refusal to accept plaintiffs' nominating petition, fifty-five petition pages containing signatures purportedly from the 5th Congressional District were notarized on August 1, August 4, August 23, or August 26, 1976. Six petition pages from the 8th Congressional District were notarized on August 26, 1976.

### History of This Litigation

Following commencement of this action on August 16, 1976, and pending the evidentiary hearing which subsequently was held on September 10, 1976, this Court entered its Order on August 26, 1976, directing that plaintiffs deliver forthwith to defendant Kirkpatrick the nominating petitions tendered on July 31 and such additional nominating petitions as had been obtained since that date. Defendant Kirkpatrick was directed by the Court's Order to determine at the earliest possible time whether the petitions had been signed by the number of qualified voters required by § 120.180, R.S.Mo. (1969), and whether the signatures complied with the requirements of § 120.-190, R.S.Mo.Supp.1975, without such action in any manner prejudicing any defense to the allegations of plaintiffs' complaint. Pursuant to the Court's Order, all petitions obtained by that date were delivered to and accepted by the Secretary of State on August 26, 1976.

A full evidentiary hearing in this cause was held on Friday, September 10, 1976, in Jefferson City, Missouri, at which the Court received in evidence Defendant's Report on Results of Signature Verification Pursuant to Order of August 26, 1976, the parties' Stipulation of Agreed Facts, and an additional letter offered by counsel for plaintiffs. Neither counsel for plaintiffs nor counsel for defendant desired to present further evidence to the Court, and argument was directed to the effect of Defendant's Report on Results of Signature Verification, which stated that in three of the five congressional districts for which plaintiffs submitted signatures, there were an inadequate number of signatures of qualified voters submitted. Plaintiffs' counsel presented a formal request that plaintiffs be allowed until Monday, September 13, 1976, to obtain additional signatures and that the Secretary of State be ordered to receive and check additional signatures received by that date.

Following consideration of the evidence and briefs of the parties, the Court concluded that plaintiffs' request for further order of the Secretary of State should be denied, and pursuant to the request of plaintiffs' counsel that the Court treat the application for additional time as a request for preliminary injunction, denial of which could be the basis for seeking immediate appellate review, the Court entered its Memorandum and Order dated September 10, 1976. In denying any request for preliminary injunction or other relief against defendant at that time, the Court found that plaintiffs failed to present qualified signatures sufficient to comply with the requirements of § 120.180, R.S.Mo. (1969), by failing to tender for filing with the Secretary of State of Missouri on August 26, 1976, sufficient signatures to qualify for ballot position at the general election. With regard to plaintiffs' contention that the issuance of the Attorney General's Opinion Letter on July 27, 1976, inhibited the gathering of signatures between that date and July 31, 1976, when the petitions were tendered to defendant Kirkpatrick, the Court found that plaintiffs had failed to demonstrate a particularized injury to the petition campaign and that any injury which might have resulted was more than offset by the four days in August during which plaintiffs collected additional signatures which were submitted to the Secretary of State on August 26, 1976, and were considered by him in making his Report to this Court.[4]

---

**4.** Plaintiffs' Application for Injunction Pending Appeal was presented, considered, and denied by this Court on September 10, 1976. On September 13, 1976, the Eighth Circuit Court of Appeals heard, considered, and denied summarily plaintiffs' interlocutory appeal from this Court's Memorandum and Order of September 10, 1976. Plaintiffs' appeal to Justice Blackmun, sitting as Circuit Justice, was denied on September 16, 1976.

The Court further found that § 120.180, which establishes the number of signatures required to qualify for ballot position at the November general election, and which is not challenged by plaintiffs in this action, is a valid expression of the state's interest in protecting the integrity of the ballot. Plaintiffs thus found themselves barred from the ballot by a valid provision of the laws while attempting to gain ballot access through challenging the validity of a separate provision. Because § 120.180 represented an absolute bar to plaintiff McCarthy's candidacy in Missouri, this Court found on September 15, 1976, that plaintiffs lacked standing to maintain this action. *Storer v. Brown,* 415 U.S. 724, 737, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). Accordingly, the Court ordered that plaintiffs' requests for declaratory and injunctive relief herein be denied and the cause dismissed without a determination of the merits of plaintiffs' claims.[5]

Following the order of dismissal entered on September 15, 1976, plaintiffs and a dedicated group of their campaign workers began a systematic re-check of the signatures on nominating petitions which had been invalidated by the Secretary of State in the verification process which preceded preparation of his report to this Court. With the cooperation of the Secretary of State and his staff, as well as the First Assistant Attorney General of the State of Missouri who argued this cause for defendant Kirkpatrick, this re-check of the nominating petitions was completed by 4:00 p. m. on Tuesday, September 21, 1976, the time by which the Secretary of State was required to certify to local election boards the names of candidates for President of the United States to appear on the ballot at the November 2, 1976, general election.[6] As a result of the plaintiffs' search, sufficient previously-invalidated signatures were "retrieved" by 4:00 p. m. on September 21, 1976, to enable the Secretary of State to agree that plaintiffs had submitted signatures sufficient in number to comply with the requirements of § 120.180, R.S.Mo.1969. Contending that they had remedied the defect which previously denied them standing, plaintiffs then moved the Court for a rehearing of their challenge to §§ 120.240.1 and 111.351, R.S.Mo.Supp.1976, or in the alternative, for a new trial.

At the hearing held September 21, 1976, on plaintiffs' motion for rehearing or new trial, counsel for defendant Kirkpatrick stipulated on the record that the Report on Signature Verification filed September 10, 1976, was erroneous, and that plaintiffs had achieved the required number of verified signatures to comply with § 120.180, R.S. Mo.1969.[7] The stipulation was accepted in evidence, and the Court found that based upon defendant's stipulation, plaintiffs did possess standing to bring their constitutional challenge to Missouri's election law. Plaintiffs' Motion for Rehearing accordingly was sustained, and upon consideration of the record made in the hearing in this cause held in Jefferson City, Missouri, on September 10, 1976, as well as the pleadings and

---

5. Even in declining to determine the merits of plaintiffs' claims, however, the Court felt compelled to comment upon the very substantial question which existed as to the constitutionality of §§ 120.240.1 and 111.351, R.S.Mo.Supp. 1975, and to suggest that the issues raised herein merit the serious consideration of the Missouri General Assembly in its next legislative session.

6. The Secretary of State, to cooperate with plaintiffs' verification process, had twice postponed his certification to the effect that further delay would risk delay in printing of ballots and *possible disenfranchisement of absentee* voters who must cast their ballots in advance of the general election. See § 112.020, R.S.Mo. Supp.1975.

7. As reported in open court by counsel for defendant, the accurate verification of plaintiffs' nominating petitions resulted in the following figures:

| | No. Required | No. Obtained | Surplus |
|---|---|---|---|
| 1st Cong. Dist. | 2,979 | 3,178 | 199 |
| 2nd Cong. Dist. | 4,267 | 4,304 | 37 |
| 3rd Cong. Dist. | 3,651 | 3,688 | 37 |
| 5th Cong. Dist. | 3,064 | 3,094 | 30 |
| 8th Cong. Dist. | 3,707 | 3,756 | 49 |

372

briefs filed by the parties, the Court held that § 120.240.1, R.S.Mo.Supp.1975, violates the First and Fourteenth Amendments to the United States Constitution, and that § 111.351, R.S.Mo.Supp.1975, violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. The Court therefore ordered that the Secretary of State certify the name of Eugene J. McCarthy to appear on the official ballot of the State of Missouri at the November general election and that a vote for plaintiff McCarthy shall be counted as a vote for the electors designated in his nominating petition. This Opinion is entered pursuant to the above-stated findings and order delivered orally in open court on September 21, 1976.

## The Arguments

Plaintiffs' complaint herein contends that § 120.240.1, R.S.Mo.Supp.1975, violates plaintiffs' rights under the First and Fourteenth Amendments to the Constitution of the United States because by requiring independent candidates to circulate and submit nominating petitions at a date far removed from the primary and general elections, the statute places an unreasonably and unnecessarily heavy burden on plaintiff McCarthy, thereby restricting his right to associate for the advancement of his political beliefs, and the rights of the other plaintiffs to associate freely for the purpose of expressing their political beliefs and to exercise effectively their right to vote. Plaintiffs further assert that by imposing an unreasonably early nomination deadline for independent candidates which is not applied to party candidates, § 120.240.1 invidiously discriminates between independent and party candidates, thereby denying plaintiffs equal protection under the laws as guaranteed by the Fourteenth Amendment.[8] In addition, plaintiffs contend that § 111.351,

R.S.Mo.Supp.1975, denies them equal protection of the laws because it permits defendant to place upon the ballot the names of candidates of political parties for President of the United States but does not permit the names of independent candidates for President to appear on the ballot.

■■■■■ Contending that the filing deadline imposed by Missouri's election law is a substantial and unreasonable burden upon the plaintiff's First Amendment rights and not necessary to protect any compelling and substantial governmental interest, plaintiffs correctly urge the Court to adopt the "strict scrutiny" standard of review applied in *Williams v. Rhodes,* 393 U.S. 23, 31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968), wherein the United States Supreme Court reiterated that "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." See *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). Where rights of this kind are at stake, only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms. *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Williams v. Rhodes, supra* 393 U.S. at 31, 89 S.Ct. 5; see also *Oregon v. Mitchell,* 400 U.S. 112, 238, 91 S.Ct. 260, 27 L.Ed.2d 272 (1972) (separate opinion of Brennan, White and Marshall, JJ.). Plaintiffs further cite three recent decisions by three-judge courts which, applying the "strict scrutiny" standard of review, have invalidated statutes establishing petition filing deadlines because they were too remote from the general election and thus placed unreasonable burdens upon the

8. In essence, plaintiffs contend that the April 27 deadline for filing of nominating petitions by independent candidates is the equivalent not of the declaration of candidacy by party candidates—the deadline for which also is the last Tuesday in April—but of the primary election, or the filing of petitions by candidates of new political parties—the means by which other candidates are nominated and the deadlines for which, in 1976, were August 3 and July 31, respectively.

plaintiffs' rights to associate.[9] *Salera v. Tucker,* 399 F.Supp. 1258, 1267 (E.D.Pa. 1975) (three-judge court), aff'd summarily, 424 U.S. 959, 96 S.Ct. 1451, 47 L.Ed.2d 727 (1976); *Bradley v. Mandel,* Civil Action T 76–638 (D.Md., May 17, 1976) (three-judge court); *Lendall v. Jernigan,* Case No. LR–76–C–184 (E.D.Ark., filed August 20, 1976) (three-judge court).

Defendant Kirkpatrick asserts that the following interests are served by the statute's filing deadline. He claims that the state possesses an interest in requiring independent candidates to declare themselves at an early date in order to demonstrate the seriousness of their candidacy and to assure that they have ample opportunity to get their message across. In addition, defendant Kirkpatrick contends that the early filing date for independent candidates eases the burden on the office of the Secretary of State and local election boards in verifying the signatures on nominating petitions and permits ample time for legal challenges to the Secretary's action with respect to that certification.[10]

### The Merits

■■ In *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), where the United States Supreme Court declared unconstitutional an Ohio statutory scheme which virtually precluded new or minor political parties from obtaining a position on the state's presidential ballot, the Court recognized that although the state has broad power to regulate elections, that power is subject to limitations imposed by the First, Fourteenth, Fifteenth, Nineteenth and Twenty-fourth Amendments to the United States Constitution.[11] While the state has a legitimate interest in restricting access to the ballot in order to maintain the integrity of the ballot and preserve an orderly elec-

tion process, the Supreme Court has required that the means chosen by the state to achieve its goals be carefully scrutinized, for they necessarily place burdens on the right of individuals to associate for the advancement of political beliefs, and the rights of qualified voters to cast their votes effectively. 393 U.S. at 30, 89 S.Ct. 5.

■ Although *Williams v. Rhodes* involved minor political parties, the Supreme Court held in the later cases of *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), and *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), that independent candidates are entitled to the same ballot consideration. Thus a balance must be struck so that frivolous candidates are restricted while serious candidates are provided an opportunity to secure a place on the ballot. See *McCarthy v. Askew* (S.D.Fla.) (filed Sept. 15, 1976); see also *McCarthy v. Tribbitt,* 421 F.Supp. 1193 (D.Del.) (filed Sept. 16, 1976); *Lubin v. Panish,* 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). As the Supreme Court stated in *Lubin v. Panish,* supra, 415 U.S. at 719, 94 S.Ct. at 1321, "The point, of course, is that ballot access must be genuinely open to all, subject to reasonable requirements." The Missouri General Assembly has not enacted "reasonable requirements" for the access of independent candidates to the ballot, and has fallen far short of demonstrating a compelling state interest to support the restrictions imposed by the statutes challenged herein.

■ In *Salera v. Tucker, supra* at 1266–1267, the Supreme Court affirmed

---

**9.** Having been filed after the statutory change concerning three-judge courts, this case does not require the convening of a three-judge court. See Public Law 94.381, August 12, 1976, § 7.

**10.** Defendant contends that the standard for measuring the magnitude of the state's interest

is "minimum rationality" rather than "strict scrutiny."

**11.** Since the *Rhodes* decision, Congress has passed the Twenty-Sixth Amendment, further limiting the state's power to regulate elections.

summarily the decision of a three-judge district court that a filing deadline 218 days before the general election

> substantially impairs the ability of plaintiffs' candidates to qualify as eligible independent candidates, and so threatens to keep off the ballot candidates for whom eligible voters wish to cast their vote, thereby creating a "real and appreciable impact on the exercise of the franchise"

.    .    .    .    .

Noting that the substantial burdens placed by the Pennsylvania statute on the ability of independent candidates to gain access to the ballot stemmed from forcing the candidates to complete their signature gathering "in a political vacuum," id. at 1266, the Court rejected three interests which the state asserted in support of its statute. The *Salera* court stated that, as in the case at bar, the state's interest in securing sufficient time to resolve challenges to the nominating petitions and prepare the ballots in an orderly fashion did not require a deadline approximately seven months prior to the election, since without more than minor inconvenience, a candidate's name may be added to or removed from the ballots as late as September.[12] The state's interest in preserving the integrity of the ballot by preventing defeated primary candidates from using the independent nomination process to thwart the will of the majority party failed in *Salera,* as it fails here, to justify a provision which inhibits the ability of all independent candidates, regardless of affiliation with the primary process, to obtain ballot position. Moreover, Missouri's election laws specifically prohibit an individual who has filed for any office in a party primary from filing as an independent candidate. § 120.240.2, R.S.Mo.Supp. 1975. Finally, the Court in *Salera* was not persuaded, as this Court is not, that the State's interest in promoting the intelligent exercise of the franchise was in any signifi-

cant manner furthered by an early filing deadline for independent candidates.

In *Bradley v. Mandel, supra,* a three-judge district court invalidated a statute which, like Missouri's, required that independent candidates file their nominating petitions on the same day that candidates in primary elections were required to file declarations of candidacy. In 1976, that date was March 8, which was 70 days before the party primaries in Maryland and 238 days before the general election. In Missouri, the April 27 deadline for independents in 1976 was 97 days before the party primary. Pointing out that "Signature gathering by an independent candidate is not the equivalent of the filing of a declaration of candidacy by a partisan candidate; it is the equivalent of the primary election," the *Bradley* court noted that true equal treatment of partisan and independent candidates would require that "independent candidates . . . file a declaration of candidacy at the same time as partisan candidates and then extend the date for the submission of signatures to the date of the primary election." Slip opinion at 11.

In *Lendall v. Jernigan, supra,* a three-judge court in the Eastern District of Arkansas declared unconstitutional the Arkansas statute which required an independent candidate to file nominating petitions with the Secretary of State by the first Tuesday in April preceding the general election, which in 1976 fell 210 days before the general election. As in Missouri, the filing date for independents' nominating petitions was the same date established as a deadline for filing of declarations by primary candidates of political parties.

Thus defendant Kirkpatrick has failed to demonstrate a state interest sufficiently compelling to warrant the substantial infringement by § 120.240.1 of plaintiffs' fundamental rights. In addition, defendant has failed to justify the distinction

12. For example, Missouri has provided by statute that the Secretary of State shall certify to the county clerk of each county within which any of the electors may vote for the candidates for such office, the name and description of

each person nominated not less than forty-five days before any November election. § 120.570, R.S.Mo.Supp.1975. In 1976, the statutory date for certification was September 18.

between independent and party candidates which is created by Missouri's election scheme. While an independent candidate must gather his petition signatures and file his petitions, under the Missouri statute, by the last Tuesday in April, party candidates are nominated in August, and candidates of new political parties need not submit nominating petitions until July 31, only a few days before the primary election. Thus, in the absence of a countervailing state interest, the filing deadline of the last Tuesday in April for independent candidates established by § 120.240.1 invidiously discriminates against independent candidates in violation of their rights under the equal protection clause of the Fourteenth Amendment.[13]

■■■ Similarly, no compelling state interest has been shown to justify the failure of § 111.351, R.S.Mo.Supp.1975, to provide for the names of independent candidates to appear on the ballot as it does for candidates of political parties. If states are required to afford access to the ballot for independent candidates, that access must be meaningful and not "merely theoretical." See *Jenness v. Fortson, supra* at 439, 91 S.Ct. 1970. As plaintiffs correctly have pointed out, denying plaintiff McCarthy a place for his name on the general election ballot, even though, as defendant maintains, his electors might be accorded a position, provides McCarthy access to the ballot in theory only. If an independent candidate has satisfied the various state interests in regulating access to the ballot, the state cannot constitutionally manipulate the form of the ballot to exclude his name from voter consideration. See *McCarthy v. Shanahan,* Civil Action No. 76–237–C6 (D.Kan., filed June 17, 1976); *McCarthy v. Slater,* 553 P.2d 489 (Okl., filed July 23, 1976); see also *American Party of Texas v. White, supra* at 794–5, 94 S.Ct. 1296; *Storer v. Brown, supra* at 745–6, 94 S.Ct. 1274. Therefore, § 111.351, R.S.Mo.Supp.1975, invidiously discriminates against independent candidates in violation of their rights under the equal protection clause of the Fourteenth Amendment.

■■■ The Secretary of State has refused to certify plaintiff McCarthy as a candidate for President of the United States on the official ballot of the State of Missouri on the basis of the two statutes which the Court herein finds and declares to be unconstitutional, null and void. Because the Court therefore finds that plaintiff has wrongfully been denied a place on the ballot, the only effective remedy is to order that placement. Accordingly, for the foregoing reasons, it is hereby

ORDERED that § 120.240.1, R.S.Mo. Supp.1975, establishing the filing deadline for nominating petitions of independent candidates for offices to be filled by voters of the state at large, is unconstitutional, null, void and to no effect, and enforcement thereof shall be, and is hereby, forever enjoined; and it is further

ORDERED that § 111.351, R.S.Mo.Supp. 1975, failing to provide that the names of independent candidates for President of the United States are entitled to appear on the official ballot in the State of Missouri and that a vote for such a candidate is to be counted as a vote for the electors designated in the candidate's nominating petition, is unconstitutional, null, void and to no effect, and enforcement thereof shall be, and is hereby, forever enjoined; and it is further

ORDERED that defendant shall certify the name and candidacy of plaintiff McCarthy for inclusion on the official ballot to be voted on at the November 2, 1976, general election, with the effect that a vote for plaintiff McCarthy be counted as a vote for the electors designated in plaintiffs' nominating petition.

---

**13.** In the context of the facts presented in this case, a filing deadline of no earlier than July 31 would appear reasonably supportable against this type of constitutional challenge.