David ASHWORTH, et al.

v.

Ben W. FORTSON, Jr., Secretary of State.

Civ. A. No. C–76–861–A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 21, 1976.

Al Leake pro se.

Don A. Langham, Timothy J. Sweeney, Michael J. Bowers, State of Georgia Dept. of Law, Atlanta, Ga., for defendant.

Before HILL, Circuit Judge, and HENDERSON and FREEMAN, District Judges.

PER CURIAM.

The American Party of Georgia and its individual candidates for the 1976 general election brought this action challenging the constitutional validity of statutory filing limitations imposed by the Georgia Election Code.[1] Specifically, they seek to have the filing date for candidates of minor political organizations[2] declared unconstitutional and its enforcement enjoined.[3] They contend that the filing deadline is so remote from party primaries and the general elec-

tion as to unduly burden their voting and associational rights, invidiously discriminating against new or small political organizations in violation of the Equal Protection Clause of the Fourteenth Amendment.

Georgia's qualifying requirements for non-party candidates were upheld by the United States Supreme Court in *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), aff'g sub nom. *Georgia Socialist Workers Party v. Fortson*, 315 F.Supp. 1035 (N.D.Ga.1970). However, in view of some uncertainty over the scope of the Supreme Court's decision in that case, and the subsequent impact of recent district court rulings invalidating filing dates in other states, it could not be said that *Jenness* rendered the plaintiffs' claims frivolous or insubstantial, "leav[ing] no room for the inference that the questions sought to be raised can be the subject of controversy."[4] See *McCarthy v. Kirkpatrick*, 420 F.Supp. 366 (W.D.Mo.1976); *Lendall v. Jernigan*, Civ. No. LR–76–C–184 (E.D.Ark. Aug. 20, 1976); *Bradley v. Mandel*, Civ. No. C–76–638 (D.Md. May 17, 1976), prob. juris. noted, 45 U.S.L.W. 3222 (U.S. Oct. 4, 1976); *Salera v. Tucker*, 399 F.Supp. 1258 (E.D.Pa. 1975), aff'd 424 U.S. 959, 96 S.Ct. 1451, 47 L.Ed.2d 727 (1976). See also *McCarthy v. Briscoe*, —— U.S. ——, 97 S.Ct. 10, 50 L.Ed.2d 49 (S.Ct.1976); *McCarthy v. Noel*, 420 F.Supp. 799 (R.I.1976); *McCarthy v. Tribbitt*, 421 F.Supp. 1193 (Del.1976); *McCarthy v. Askew*, 420 F.Supp. 775 (Fla. 1976). Thus, a three-judge district court was convened pursuant to the provisions of 28 U.S.C. § 2281.[5]

1. Ga.Code Ann. § 34–101, et seq.

2. The last sentence of Ga.Code Ann. § 34–1002(b). That section provides that political "party" candidates file a notice of candidacy at least 75 days prior to the general election, while non-party candidates must file their notice no later than 12:00 noon the second Wednesday in June, approximately 150 days before the general election.

3. Although these candidates originally sought an injunction as to the 1976 election, they subsequently abandoned that position and now seek to enjoin application of the statute only in future elections.

4. *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973).

5. 28 U.S.C. § 2284 was recently amended to restrict the use of three-judge courts to actions challenging the constitutionality of the apportionment of congressional districts or statewide legislative bodies, and Section 2281 was repealed. 90 Stat. 1119. The amendment does not apply to any action commenced on or before August 12, 1976. The complaint in this instance was filed May 18, 1976 and is therefore not controlled by the amendment.

The facts in this case are undisputed. In Georgia, candidates for political office may have their names appear on the election ballot by following one of three alternative routes: as candidates of a political "party", a political "body", or as independents. Political organizations receiving at least 20% of the total vote in the preceding gubernatorial election are defined as political "parties," [6] entitled to choose their candidates for office in a primary election held the second Tuesday in August.[7] Party candidates must qualify for the primary on the second Wednesday in June, and the winner files his "notice of candidacy" thereafter, at least 75 days before the general election.[8] His name then automatically appears on the ballot.

Political organizations, such as the American Party of Georgia, polling less than 20% of the total vote in the preceding gubernatorial election, or having no candidate in that election, are political "bodies." [9] In order for their nominees to be placed on the ballot, they must register with the Secretary of State [10] and establish a state executive committee and county committees "in each county in which the body operates if it operates in two or more counties." [11] Their candidates must be nominated in a convention held at least 90 days before the party primaries.[12] They then file nominating petitions with the Secretary of State on the second Wednesday in June,[13] the same date party candidates qualify for the primary, certifying those persons actually nominated in the body convention [14] and signed by 5% of the total number of registered voters in the preceding election for the particular office sought.[15] Signatures may be secured any time within the six months (180) days immediately prior to the June filing date,[16] and although voters may sign each petition only once, they may sign as many different petitions as they wish and are not thereafter disqualified from participating in the party primaries.

Independent candidates may gain access to the ballot simply by filing their nomination petitions in June, circulated within the preceding 180 days and signed by the requisite 5% of the registered voters in the prior election for that office.[17]

The plaintiffs were nominated by the American Party of Georgia as candidates for the United States Congress, Georgia General Assembly, Clayton County School Board, Clayton County Commission of Roads and Revenue, and the Presidential Electoral College. They brought this action on May 18, 1976, before the June 9, 1976 filing date. Later, three of the plaintiffs were successful in gathering the necessary signatures by the required time and will appear on the November election ballot.[18] The remaining candidates, unable to secure signatures of 5% of the voters by the deadline, continued their efforts up until August 18, 1976, the filing date for party primary winners, but could accumulate no more than 6,000 signatures out of approximately 109,000 needed to comply with the Georgia statute.[19]

---

6. Ga.Code Ann. § 34–103(u).

7. Ga.Code Ann. § 34–801 (1971).

8. Ga.Code Ann. § 34–1002(b).

9. Ga.Code Ann. § 34–103(s), (t).

10. Ga.Code Ann. § 34–901.

11. Ga.Code Ann. § 34–905.

12. Ga.Code Ann. § 34–1012(e).

13. Ga.Code Ann. § 34–1002(b).

14. Ga.Code Ann. § 34–1001.

15. Ga.Code Ann. § 34–1010(b).

16. Ga.Code Ann. § 34–1010(e).

17. Ga.Code Ann. § 34–1010.

18. These plaintiffs are Ken Hawkins, candidate for Clayton County Commission of Roads and Revenue; Gene Harrison, candidate for the Georgia General Assembly; and James Bearden, candidate for Clayton County School Board.

19. The plaintiffs report that the approximate number of signatures required to meet the 5% are, 60,000 for County offices, 12,000 for Congress and 109,000 for Presidential Electors.

The plaintiffs argue that *Jenness* determined only the constitutional validity of qualifying requirements for independent candidates, and not those for political bodies. Citing *Salera* and its progeny, they now complain that the six-month period for procuring signatures and the June filing date are so remote from the primaries and the general election as to unduly burden their First Amendment right of association and infringe upon their right to vote. They claim that they are compelled to gather support in a political vacuum, as early as the preceding December, when opposition candidates are unknown, issues are not yet defined and political enthusiasm is low. Their efforts are hampered, they say, by adverse weather conditions, short days and a public more concerned with winter holidays that the upcoming general election. All of this, they urge, makes it difficult for minor political organizations to gain enough support to appear on the ballot, decreasing their opportunity to gain the 20% vote required to qualify as a political "party," much less win an election, thereby invidiously discriminating against new political groups in violation of the Equal Protection Clause.

The defendant views *Jenness* as dispositive and contends that it upheld all qualifying requirements of the Georgia Election Code in a broad constitutional attack. The defendant also reasons that the filing deadline is justified for compelling reasons in assuring that candidates have at least a modicum of community support, preventing a "laundry list" ballot, insuring the integrity of the two-party system and the election process, and easing administrative burdens in processing and verifying petitions in time for ballot preparation.

The Georgia Socialist Workers Party, a political body, was one of the plaintiffs before the district court in *Jenness*, and although it was not an appellant in the Supreme Court, Justice Stewart, speaking for the majority, noted:

The Georgia Socialist Workers Party was one of the plaintiffs in the District Court, but is not an appellant here. We may assume, however, without deciding, that the individual appellants can properly assert the interests of that "political body."

403 U.S. at 441, n. 26, 91 S.Ct. at 1975.

■ Where particular provisions of state election codes come under constitutional attack, the Supreme Court has consistently analyzed the overall burden of the comprehensive election scheme, rather than evaluating each section separately, in a piecemeal fashion.[20] *McCarthy v. Briscoe, supra*; *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). In *Jenness*, the Court, comparing the Georgia plan with the Ohio election code held unconstitutional in *Williams v. Rhodes, supra*, said in part:

Unlike Ohio, Georgia freely provides for write-in votes. Unlike Ohio, Georgia does not require every candidate to be the nominee of a political party, but fully recognizes independent candidacies. *Unlike Ohio, Georgia does not fix an unreasonably early filing deadline for candidates not endorsed by established parties.* Unlike Ohio, Georgia does not impose upon a small party or a new party the Procrustean requirement of establishing elaborate primary election machinery. Finally, and in sum, Georgia's election laws, unlike Ohio's do not operate to freeze the political status quo. In this setting we cannot say that Georgia's 5% petition requirement violates the Constitution. [emphasis added].

. . . . .

[A candidate] may enter the primary of a political party, or he may circulate nominating petitions either as an independent candidate or under the sponsorship of a

---

20. See Developments in the Law—Elections, 88 Harv.L.Rev. 1111 (1975) for a thorough analysis in this area.

political organization. We cannot see how Georgia has violated the Equal Protection Clause of the Fourteenth Amendment by making available these two alternative paths, neither of which can be assumed to be inherently more burdensome than the other.

403 U.S. at 438 and 440–441, 91 S.Ct. at 1974–1975. While a political body was not an appellant in *Jenness*, and the precise issues there were the constitutional validity of nominating petitions in general and the 5% voter signature rule, we believe that the Supreme Court, although not required to do so, held that the filing deadline, as a part of the entire Georgia election procedure, is constitutionally valid, and not so remote from the primaries and the general election as to violate the Equal Protection Clause. The Georgia Code has subsequently been cited in both majority and dissenting Supreme Court opinions as an example of constitutional election regulation.[21]

■■■ Even in light of more recent cases decided since *Jenness*, the statutory time limits for political body candidates under the Georgia Election Code passes constitutional muster. It is well recognized that the State has a legitimate interest in regulating the number of candidates on the ballot by requiring that they demonstrate some measure of community support before their names may appear on the ballot. *McCarthy v. Briscoe, supra*; *Storer v. Brown, supra*; *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Jenness v. Fortson, supra*; *Williams v. Rhodes, supra*. The Court further recognized that the Equal Protection Clause does not require that identical routes to the ballot be afforded for all candidates, whether independents, nominees of political bodies or established political parties. *American Party of Texas v. White, supra*, 415 U.S. at 782, 94 S.Ct. 1296. The State has a legitimate interest in restricting ballot access to maintain the integrity of the election process. But the means chosen to achieve this goal must be carefully scrutinized[22] and balanced against any infringement of voting and rights of association.

Georgia's filing date for political bodies falls approximately 150 days before the general election and 60 days before the party primaries. This is at least one month closer to the general election than the deadlines recently held unconstitutional by other district courts.[23] During this two-month period between the June filing date and the August primaries, the State must process the petitions for independent and political body candidates and party primary candidates filing nominating petitions in lieu of paying the filing fee.[24] Each signature must be verified and sufficient time set aside for resolving contested petitions. The State has demonstrated that this time frame is reasonably required to process petitions.

Furthermore, the generally liberal quality of the Georgia election system as a whole is balanced against any potential hardship on independent or political body candidates. Petition signatures need not be notarized, as in some states;[25] the pool of voters from whom signatures may be collected is virtu-

**21.** *American Party of Texas v. White*, supra. (Majority and dissenting opinions at 782, 785 and 796, 94 S.Ct. at 1306, 1308 and 1313); *Storer v. Brown*, supra at 732, 758 and 765, 94 S.Ct. at 1280, 1292 and 1296; *Lubin v. Panish*, 415 U.S. 709 at 719, 94 S.Ct. 1315, 39 L.Ed.2d 702 at 710 (1974); *Bullock v. Carter*, 405 U.S. at 147, 92 S.Ct. 849 at 857, 31 L.Ed.2d 92 at 102.

**22.** *Williams v. Rhodes*, supra.

**23.** *McCarthy v. Kirkpatrick*, supra, (Missouri— 188 days before the general election and 97 days before the primaries); *Lendall v. Jernigan*, supra, (Arkansas—210 days before the general election); *Bradley v. Mandel*, supra, (Maryland —238 days before the general election and 70 days before the primaries); *Salera v. Tucker*, supra, (Pennsylvania—218 days before the general election and 49 days before the primaries).

**24.** In *Georgia Socialist Workers v. Fortson*, supra, the district court struck down mandatory qualifying fees. In the meantime, the Georgia legislature enacted § 34–1005 which provides petitioning as an alternative to qualifying fees.

**25.** Compare the Georgia Code with Texas Election Code, Art. 13.45(2) (Supp.1973) and Colo. Rev.Stat.Ann. § 49–7–1(4).

 

ally unrestricted;[26] and candidates are given a full 180 days in which to gather signatures. Organizational requirements are uncomplicated and there are no distributional impediments for petition signatures. Unlike many of the statutes recently held unconstitutional,[27] the Georgia Code does make provisions for independent candidates appearing on the ballot and for write-in votes.[28] In fact, Georgia's election laws "do not operate to freeze the political status quo"[29] as evidenced by the fact that a political body candidate carried the State in the 1968 presidential election.[30] Some of these plaintiffs were able to obtain ballot status under the challenged provision, and the others are currently conducting a write-in campaign.

The plaintiffs claim that they must procure their signatures before election issues are crystalized. However, the presidential primaries are conducted early in the year in many states and campaign issues are vigorously argued in the months before that. They say that they must choose their candidates and acquire support before the opposition is known. Yet, even party nominees do not know all opposing candidates until after the primaries, and this complaint, it seems, goes more to independent candidacies than those of political bodies in that the latter are organized for the advancement of mutual political goals and positions on the issues, rather than focusing on individuals.

Although some improvement may be had in the overall scheme by moving the filing date for independent candidates and minor political organizations to a time closer to the general election, and by reducing the percentages for nominating petitions, we believe that these matters are best left to the sound judgment of the legislature.

We hold that the filing dates for political body candidates under the Georgia Election Code are constitutionally valid and do not deny equal protection of the law.

Accordingly, the plaintiffs' request for declaratory and injunctive relief is denied, and the petition is dismissed.

---

26. § 34–1010(c) Those who sign petitions must be qualified and registered electors entitled to vote in the next election and may sign each petition only once.

27. For a summary of issues on appeal in one of these recent cases, see *Bradley v. Mandel*, supra at 45 U.S.L.W. 3222 (U.S. Oct. 4, 1976) wherein the Supreme Court noted probable jurisdiction.

28. See *McCarthy v. Briscoe*, supra.

29. 403 U.S. at 438, 91 S.Ct. at 1974.

30. In the 1968 Presidential election, George Wallace, the candidate of the American Independent Party, received more votes than either of the two major political parties.