Dear Mr. Kirkpatrick:
This official opinion is being issued in response to three questions which you recently requested that this office rule upon; those questions are as follows:
 1. Can a new political party qualify presidential and vice presidential candidates for the ballot on any other than a statewide basis, such as qualification in one or more congressional districts or in one or more general assembly districts?
 2. If a new political party submits candidates for several different offices on a single petition form, such as for president, vice president, state senator and state representative, and if the petition fails for the lack of the required ballot signatures for one or more of those offices, is it still proper to place on the ballot the names of other candidates in those districts in which they do have the required signatures?
 3. May a new party qualify to put names of candidates on the ballot by merely indicating the number of general assembly districts in which they wish to qualify when they have omitted the names, addresses and offices of the candidates required under Section 115.315.2, RSMo?
We will answer the questions seriatim in the order presented above; however, before those questions are directly answered, the following background is presented:
It is our understanding that the instant opinion request has its genesis in an effort by the Citizens Party, potentially a new political party, to place its candidates on the ballot pursuant to § 115.315, RSMo 1978. The pertinent facts as submitted to us follow:
 On petitions in several areas [the Citizens Party has] included the names of the presidential and vice-presidential candidates and electors, and the numbers of legislative districts in which they wish to qualify, and have not listed by name, address and office the candidates for those other offices. In other areas, they have submitted not only the name of the presidential and vice-presidential candidates and the electors, but also the names, addresses, and districts of candidates for general assembly.
 The total number of signatures submitted may not equal the total number required for a new party to be formed for the entire state. The Citizens Party apparently believes that presidential and vice-presidential candidates and presidential electors may be placed on the ballot in districts in which they meet the two percent ballot signature requirement, be they congressional or general assembly districts, even if the petition fails to meet the requirements for getting on the ballot statewide, since the statutes do not explicitly call the office of the presidency a statewide office for purposes of qualification in Missouri of new political parties.
 A.
Your first question relates to whether a person running for the presidency of the United States may do so, in Missouri, "on any other than a statewide basis . . . ."
The statute most relevant to this inquiry is § 115.315, RSMo 1978. It states, in material part, as follows:
 1. Any group of persons desiring to form a new political party throughout the state, or for any congressional district, state senate district, state representative district or circuit judge district, shall file a petition with the secretary of state. . . .
* * *
 If presidential electors are to be nominated by petition, at least one qualified resident of each congressional district shall be named as a nominee for presidential elector. The number of candidates to be nominated shall equal the number of electors to which the state is entitled, and the name of their candidate for president and the candidate for vice president shall be printed on each page or a sheet attached to each page of the petition. The names of the candidates for president and vice president may be added to the party name, but the names of the candidates for president and vice president shall not be printed on the official ballot without the written consent of such persons. Their written consent shall accompany and be deemed part of the petition; . . .
* * *
 4. If the new party is to be formed for the entire state, the petition shall be signed by the number of registered voters in each of the several congressional districts which is equal to at least one percent of the total number of votes cast in the district for governor in the last gubernatorial election, or by the number of registered voters in each of one-half of the several congressional districts which is equal to at least two percent of the total number of votes cast in the district for governor at the last gubernatorial election.
Based upon the foregoing it is clear that the answer to your first question does not revolve around whether the offices of the United States President and Vice President are statewide offices. The sole issue is whether the office of presidential elector is a statewide office; if it is, then a statewide party must be formed to support the candidacy of presidential electors. We reach this conclusion for the following reasons:
Americans do not, and never have, directly voted for either presidential or vice presidential candidates. See, Article II, § 1, and Amendment XII, United States Constitution. The citizens of each state vote for electors who, at a later date, meet and directly vote for the President and Vice President of the United States of America.
Certainly, presidential electors are state officers.Walker v. United States, 93 F.2d 383 (8th Cir. 1937). It follows that when § 115.315, RSMo 1978, is read in conjunction with Chapter 128, RSMo 1978, the mandated conclusion is that Missouri's twelve presidential electors hold statewide office since each elector's office is subject to a statewide vote. Therefore, non-established political parties (see § 115.317, RSMo 1978) endeavoring to nominate presidential electors and place their candidate for president on the ballot must comply with the signature requirements found in § 115.315.4, RSMo 1978.
If the candidate is running for statewide office in Missouri then, by necessary implication, the party which supports him must also be statewide. If the candidate for statewide office chooses not to run as a candidate of an established political party, and does not wish to run as an independent candidate, he may form a new political party and choose to run as its candidate, provided that he has sufficient statewide support. Section 115.315.4, RSMo 1978.
The Citizens Party may become a new political party in this State as defined by § 115.317, RSMo 1978. While its candidate for the United States presidency is Barry Commoner, the citizens of this State may only vote for presidential electors nominated by the Citizen's Party if it is established as a new political party. Since presidential electors are state officers and hold statewide office any new political party formed to support them must necessarily also be statewide; therefore, in order for this potential new political party — the Citizens Party — to be able to nominate presidential electors and get its candidates for United States President and Vice President on the ballot, it must meet the signature requirements in § 115.315.4, RSMo 1978.
The signature requirements found in § 115.315.4, RSMo 1978, are not onerous, and they serve substantial and compelling state interests. As stated by Mr. Justice Stevens, concurring in Illinois State Board of Elections v. SocialistsWorkers Party, 440 U.S. 173, 59 L.Ed.2d 230, 99 S.Ct. 983
(1979):
 Placing additional names on a ballot adds to the cost of conducting elections and tends to confuse voters. The State therefore has a valid interest in limiting access to the ballot to serious candidates. . . .
Id., 440 U.S. at 189, 59 L.Ed.2d at 244. And, as stated by the Court in Jenness v. Fortson, 403 U.S. 431, 442,29 L.Ed.2d 554, 562-563, 91 S.Ct. 1970 (1971):
 There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot — the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election. . . .
Or, as the Court stated in Lubin v. Panish, 415 U.S. 709,39 L.Ed.2d 702, 94 S.Ct. 1315 (1974):
 That "laundry list" ballots discourage voter participation and confuse and frustrate those who do participate is too obvious to call for extended discussion. The means of testing the seriousness of a given candidacy may be open to debate; the fundamental importance of ballots of reasonable size limited to serious candidates with some prospects of public support is not. Rational results within the framework of our system are not likely to be reached if the ballot for a single office must list a dozen or more aspirants who are relatively unknown or have no prospects of success.
* * *
 [W]e note that there are obvious and well-known means of testing the "seriousness" of a candidacy which do not measure the probability of attracting significant voter support solely by the neutral fact of payment of a filing fee. States may, for example, impose on minor political parties the precondition of demonstrating the existence of some reasonable quantum of voter support by requiring such parties to file petitions for a place on the ballot signed by a percentage of those who voted in a prior election. . . .
Id., 415 U.S. at 715-716 and 718, 39 L.Ed.2d at 708 and 710.
The State of Missouri, by requiring new political parties to show a modicum of political support indicating the seriousness of their candidates, is using a well-established technique continuously found constitutional, appropriate, and acceptable by the United States Supreme Court. Surely, it cannot be contended that Missouri's signature requirements are burdensome for the truly serious candidate with even miniscule support. If the Citizens Party endeavored to get signatures from two percent of those who had voted in the last gubernatorial election, from five congressional districts, they would need only about 16,500 signatures. McCarthy v. Kirkpatrick,420 F. Supp. 366, 371 n. 7 (W.D. Mo. 1976).
In light of the foregoing we conclude that in order for a new party to nominate presidential electors it must comply with the signature and petition requirements of § 115.315.4, RSMo 1978.
 B.
In your second question you ask if the names of the candidates of a new party who do meet the petition and the signature requirements of Chapter 115, RSMo 1978, can be placed on the ballot even if that new political party submits candidates for other offices in a single petition form who fail to meet the signature and petition requirements in that Chapter.
We answer this inquiry in the affirmative. Section115.315, RSMo 1978, allows a new political party to be formed and limited, if it so desires, to a particular geographical section of this State. Since § 115.315, RSMo 1978, requires that the new party place on its petition a complete list of the names and addresses of all candidates to be nominated for office, and the offices for which each candidate is to be nominated, even if the new party fails to qualify for the entire State, if it meets the test in § 115.315.5, RSMo 1978, for a legislative district, or any other enumerated section of the State, the new party should be considered formed for that district or section and the name of the candidate or candidates placed on the ballot.
 C.
In your third and final question you inquire as to whether a new party meets the requirements of § 115.315, RSMo 1978, and legally entitled to place its candidates on the ballot "by merely indicating the number of general assembly districts in which they wish to qualify when they have omitted the names, addresses and offices of the candidates required under Section 115.315.2, RSMo?"
Section 115.315.2(3), RSMo 1978, states:
 2. Each page or a sheet attached to each page of each petition for the formation of a new political party shall:
* * *
 (3) Give a complete list of the names and addresses, including the street and number, of all candidates to be nominated for office; . . .
Axiomatically, for a new party to be able to place a candidate on the ballot it must specifically state the names and addresses of its proposed candidates. Any petition which merely mentions the legislative district for which the new party wishes to qualify may not legally be considered a valid petition with respect to that district. Not only does such a defective petition fail to meet the statutory requirement just quoted, it also fails to indicate to the public and potential petition signers whom they are selecting to run for office.
CONCLUSION
1. It is the opinion of this office that presidential electors are state officers elected to statewide office. Consequently, in order for a new party to meet the statutory requirements of § 115.315, RSMo 1978, and nominate presidential electors and place its candidate for the United States President before this State's electorate it must meet the signature and petition requirements imposed by § 115.315.4, RSMo 1978.
2. If a new political party submits a petition in which some of its candidates meet the requirements of § 115.315, RSMo 1978, and others do not, those that do are legally entitled to be placed on the ballot.
3. In order for a new political party to place its candidates on the ballot in this State it must give a complete list of the names and addresses, including the street and number, of all candidates to be nominated for office, as specifically called for in § 115.315.2(3), RSMo 1978.
The foregoing opinion, which I hereby approve, was prepared by my Assistant, Michael Hillel Finkelstein.
Very truly yours,
 JOHN ASHCROFT Attorney General