## STATE of Missouri, ex rel., Laura COKER–GARCIA, Joan Dow, Harry Lee Moffett, Anthony Garcia, Phil Horras and the National Libertarian Party, Appellants,

v.

### The Honorable Roy D. BLUNT, Secretary of State, State of Missouri, Respondent.

### No. WD46977.

Missouri Court of Appeals, Western District.

Jan. 19, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1993.

Application to Transfer Denied April 20, 1993.

Mitchell J. Moore, Columbia, Paul R. Lamoree, Kansas City, for appellants.

William L. Webster, Atty. Gen., Simon B. Buckner, Deborah Ground Buckner, Asst. Attys. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, C.J., and SHANGLER, TURNAGE, KENNEDY, BERREY, FENNER, ULRICH, BRECKENRIDGE, HANNA, SPINDEN and SMART, JJ.

LOWENSTEIN, Chief Judge.

This case involves an interpretation of Missouri election laws as contained in Chapter 115 RSMo 1986, and comes to this writer after reassignment. The suit involves an appeal from the total denial by the trial court of a petition for writ of mandamus against the Missouri Secretary of State, the respondent. It was filed by several candidates and the Libertarian Party for inclusion of candidates on the ballot for the general election held November 3, 1992. The Libertarian party and the others involved, filed this appeal in our Supreme Court, which transferred it to this court on October 16. This court expedited the matter so that argument and submission of the case occurred Thursday, the 29th of Octo-

ber. Due to the proximity of the election, the panel hearing the argument gave a decision from the bench. The panel affirmed the three issues which had been presented, the Libertarian candidates were not on the ballot. This matter was then transferred to the court *en banc* and this opinion followed.

This appeal addressed three issues: 1) whether a new party which obtains the requisite number of petition signatures to be certified as a party for the entire state has to show an additional modicum of local support for its local, county or district candidates, 2) whether a new party candidate for state representative who files a declaration of candidacy in a district other than that of his residence and the formation petition also lists an incorrect district number, may he later be put on the ballot in the actual district of residence, and 3) whether a party may replace a candidate who dies within the statutorily allowed replacement period but who had not filed a statutorily required declaration of candidacy form.

By far the most difficult issue for this court to address is the first mentioned: do local or district candidates of a newly certified state-wide party have to show a modicum of local support under Missouri's statutory scheme for certifying new parties? The appellants, Laura Coker–Garcia and Anthony Garcia, were, respectively, the Libertarian candidates for sheriff and assessor of Boone County.

The law as contained in § 115.315, RSMo 1986 is pertinent:

115.315. New political party, how formed.—1. Any group of persons desiring to form a new political party throughout the state, or for any congressional district, state senate district, state representative district or circuit judge district, shall file a petition with the secretary of state. Any group of persons desiring to form a new party for any county shall file a petition with the election authority of the county.

\* \* \* \* \* \*

4. If the new party is to be formed for the entire state, the petition shall be signed by the number of registered voters in each of the several congressional districts which is equal to at least one percent of the total number of votes cast in the district for governor in the last gubernatorial election, or by the number of registered voters in each of one-half of the several congressional districts which is equal to at least two percent of the total number of votes cast in the district for governor at the last gubernatorial election.

5. If the new party is to be formed for any district or county, the petition shall be signed by the number of registered voters in the district or county which is equal to at least two percent of the total number of voters who voted at the last election for candidates for the office being sought.

Under subsection 4, the Libertarian Party obtained adequate signatures on petitions for the Secretary of State to certify it as a state-wide party for the 1992 election. The party submitted to the Secretary of State the requisite number of signers in five of Missouri's nine congressional districts. Those district boundaries are shown in the Appendix to the majority opinion. The respondent made a determination the Party had indeed satisfied subsection 4 and put on the ballot the state-wide candidates of the Libertarian Party (governor, etc.) and the names of those local candidates whose districts included the congressional districts from which the Libertarian had gathered petitions. In effect, the Secretary of State held the local candidates in the areas where petition signatures had not been sought or obtained, would have to be examined to determine whether they should be on the ballot.[1]

---

1. Although the Secretary of State left the matter of local candidates' eligibility up to local election officials, the purport of his ruling was to require a local candidate to be able to show two percent petition signatures on the Libertarian petitions before the local candidate could be certified. In the case at bar, there would be no reason for a Boone County election official to search for the necessary petition signers as the Libertarian state-wide petitions either were not circulated in the congressional district in which Boone County lies, or the party did not elect to

The circuit court judgment reviewed here stated: "Section 115.315.4 requires a candidate who is running throughout the state to demonstrate that he has support throughout the state. To that end, the statute calls for candidates for statewide office to obtain a number of signatures from all the state's congressional districts, or a larger number of signatures from half of the districts". In quoting from language in *Libertarian Party v. Bond*, 764 F.2d 538 (8th Cir.1985), the circuit court said the requirements of subsection 4 " 'further the states' important interests in protecting the integrity of the political processes from frivolous ... candidacies, in insuring that their election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot, and in avoiding the expense and burden of run-off elections" '.

The Libertarian effort to gather signatures under subsection 4 did not include the ninth congressional district of which Boone County is a part. At the heart of this appeal is the following language from the judgment. "Section 115.315.5 is the corresponding section that requires candidates for county and district offices to demonstrate a 'significant modicum' of support in the relevant political jurisdiction. The law requires a candidate for Boone County office to demonstrate some level of support in Boone County. Relators' (appellants) interpretation of the law would allow a new political party to obtain signatures equal to two percent of votes cast in the district for governor in the last gubernatorial election in one-half of the congressional districts in the state—in St. Louis, Kansas City and Springfield—and then run candidates for county office in the remaining congressional districts with no prior showing of support in those counties. Section 115.-315.5, as construed by the Secretary of State, does not constitute an undue burden upon the rights of candidates or voters".

obtain signatures in Boone County to meet the two percent for the larger area of the congres-

The Court overrules the decision and the underlying legal rationale requiring local candidates of a newly formed statewide political party to demonstrate additional local support through petition signatures. The judgment contradicts the Constitution in the area of political party formation and does not withstand a reasonable interpretation of § 115.315.

■ There is no reason for this court to defer to the Secretary of State's interpretation of the statutes governing new political parties. That interpretation restricts the firmly imbedded constitutional right of citizens to organize new political parties and stifles the interplay of political ideas which emanate from new political parties.

"For more than two decades, this Court has recognized the constitutional right of citizens to create and develop new political parties. The right derives from the First and Fourteenth Amendments and advances the constitutional interest of like minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences. *See Anderson v. Celebrezze*, 460 U.S. 780, 793–94 [103 S.Ct. 1564, 1572, 75 L.Ed.2d 547] (1983); *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 [99 S.Ct. 983, 990, 59 L.Ed.2d 230] (1979); *Williams v. Rhodes*, 393 U.S. 23 [89 S.Ct. 5, 21 L.Ed.2d 24] (1968). To the degree that a State would thwart this interest by limiting the access of new parties to the ballot, we have called for the demonstration of a corresponding interest sufficiently weighty to justify the limitation, *see Anderson*, 460 U.S. at 789 [103 S.Ct. at 1570], and we have accordingly required any severe restriction to be narrowly draw to advance a state interest of compelling importance."

*Norman v. Reed*, — U.S. ——, ——, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992) (footnotes omitted).

sional district.

■ Because state ballot restrictions endanger vital individual constitutional rights, "a State must establish that its classification is necessary to serve a compelling interest." *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979). The state has a legitimate interest in regulating the number of candidates on the ballot. The state can weed out the candidates who lack serious interest to avoid plurality results, *Id.* at 185, 99 S.Ct. at 990, by requiring "a significant modicum of support", said the United States Supreme Court at pages 185–86 of *Socialist Workers:*

> "we have required that States adopt the least drastic means to achieve their ends ... The State's interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the political development of the Nation ... an election campaign is a means of disseminating ideas as well as attaining political office ... Over-broad restriction on ballot access jeopardize this form of political expression."

(citations omitted).

■ Because this case involves the right of access to the ballot, this court reviews this judgment under "strict scrutiny" for justification that the state used "the least restrictive means" of protecting its interests. *Id.* at 186, 99 S.Ct. at 991. *See also Libertarian Party v. Bond*, 764 F.2d 538, 540–41. But see: *Iowa Socialist Party v. Nelson*, 909 F.2d 1175, 1177–78 (8th Cir. 1990) which states the appropriate review may be "a balancing approach". The "strict scrutiny" test, however, is nothing new to examining Missouri ballot restrictions:

*Antonio v. Kirkpatrick*, 453 F.Supp. 1161, 1164 (W.D.Mo.1978), where the ten-year residency requirement for State Auditor was struck down because of the real impact on the exercise of franchise. The court quoted from *Dunn v. Blumstein*, 405 U.S. 330, 355, 92 S.Ct. 995, 1009, 31 L.Ed.2d 274 (1972):

Semantics aside, the question is resolved judicially by determining what is more important to our form of government; the rights protected by the state law in question or the rights infringed by it.

*McCarthy v. Kirkpatrick*, 420 F.Supp. 366 (W.D.Mo.1976), relating to filing deadlines for an independent presidential candidate. Judge Hunter said where rights of this kind are at interest only a compelling state interest in the subject within a state's constitutional power to regulate can justify limiting First Amendment freedoms. *Id.* at 372. In striking down time limitations on the filing of petitions, the court found the defendant Secretary of State "has failed to demonstrate a state interest sufficiently compelling to warrant an infringement by statute." *Id.* at 374–75.

*Labor's Educ. & Political Club–Indep. v. Danforth*, 561 S.W.2d 339, 348 (Mo. banc 1977), where the state was held up to a strict scrutiny standard on an election law which came from the initiative process. The state could not show a compelling interest for restrictions in the election law.

As said in *Rhodes*, 393 U.S. at 31–32, 89 S.Ct. at 11:

"New parties struggling for their place must have the time and opportunity to organize in order to meet reasonable requirements for ballot position, just as the old parties have had in the past."

■ And again, the state must put forth compelling reasons where "unequal burdens on minority groups", are proposed. In *Socialist Workers*, 440 U.S. at 173, 99 S.Ct. at 983, the Supreme Court found an equal protection violation where Illinois failed to adequately explain a discrepancy in signature requirements between candidates seeking different offices at different levels of government. *See Gjersten v. Board of Election Comm'rs. for Chicago*, 791 F.2d 472 (7th Cir.1986). The Court in *Socialist Workers* said no to a legal quirk which required a local candidate to get more signatures than one running statewide.

The Secretary of State in the case at bar has presented *no plausible* argument why a party it certified statewide must now, for

two candidates for local office in Boone County (one of 114 counties plus St. Louis City) must collect additional signatures. Satisfying the larger and more burdensome statewide requirement should preclude additional local signature requirements on county offices. The judgment here will not withstand equal protection scrutiny, for the purported reason of unclogging Missouri's election machinery, *Socialist Workers Party v. Secretary of State,* 412 Mich. 571, 317 N.W.2d 1, 9 (1982), under either strict scrutiny or a balancing test, neither the Secretary of State's or the trial court's result should not stand.

Boone County's ballot would not have suffered by the inclusion of the two candidates. The evil to be protected against in *Socialist Workers,* 440 U.S. at 173, 99 S.Ct. at 983, is not present here.

Even if this case involved no constitutional question and the court merely had to construe § 115.315, the result would be the same. The clear wording in the very first sentence of § 115.315.4 reads, "any group of persons desiring to form a new political *party for the entire state,*" (emphasis supplied). The statutory mechanism to gain statewide status for a new party is spelled out in subsection 4 (either 2% of the votes previously cast for governor in one-half of the congressional districts or 1% in all nine districts).

Conversely, under subsection 5 if a "group of persons desiring to form a new party for any *county,*" it must under § 115.315.5 obtain signatures equal to 1% of the last vote for the "office being sought." (Emphasis also supplied).

This statute is concerned with a new political *party* and a showing of enough of an interest to put that party's slate of candidates on the ballot either *statewide* or for a specific locality. In subsection 4 there is a legislatively mandated modicum of support the new party has to show statewide, as opposed to a separate and discrete statutory scheme for *individual* candidates under subsection 5, so it is not up for decision by the Secretary of State or any local election authority to demand a show of support for each and every local candidate of a party previously certified "for the entire state". § 115.315.4.

The pitfalls requiring local signatures of support for a local candidate running on a previously certified state-wide party ticket become apparent. If, when the petition gathering process begins, the new party wants to run candidates statewide as well as for local offices, the party must show a modicum of local support under § 115.315.5 as well as meet one of the certification options. Engrafting the state-wide options over the local requirements subsection 4 sets in motion a logistical nightmare. For example, in this case if a new state-wide party also wanted to run as a candidate for Boone County Prosecutor, then it could not, in meeting the statewide requirement of subsection 4 choose to bypass getting signatures in the ninth congressional district or for that matter in Boone County. The party would have to plan to get signatures equal to two percent of the last vote in the county for prosecutor under subsection 5 whether or not it chose either alternative under subsection 4. Such a dictated choice would easily thwart the sanctioned alternative of a new state-wide party to opt for the two percent in a majority of the congressional districts and, would as a practical matter, mandate at least obtaining one percent of the vote for governor in all nine districts. Even such a course would still not necessarily pass muster under the respondent's interpretation as the possibility looms that one percent of the congressional vote in Boone County would not equal two percent for prosecutor. Yet still, this whole interpretation would impermissibly impinge on the signature gathering process within a congressional district.

The appendix to this opinion, the boundary map of the nine congressional districts is reprinted from page 71 of the *Official Manual of the State of Missouri 1991–92.* The map shows, for example, Boone County makes up only a part of a twenty-two county congressional district, which extends from the Iowa border through most of Franklin County. To require a new party to get signatures to qualify state-wide and then go into each county or local race

to get additional or more geographically diverse signatories would indeed lead to an unwarranted burden on a new party to run statewide and local candidates.

As stated earlier, the method adopted by the respondent of reading subsections 4 and 5 together to create a sufficient showing of support for local candidates of a state-wide party would be burdensome, excessive and almost totally incapable of ascertainment. This is exactly what is decried in the language of *American Party of Texas v. White*, 415 U.S. 767, 783, 94 S.Ct. 1296, 1307, 39 L.Ed.2d 744 (1974):

> Of course, what is demanded may not be so excessive or impractical as to be in reality a mere device to always, or almost always, exclude parties with significant support from the ballot. The Constitution requires that access to the electorate be real, not "merely theoretical." *Jenness v. Fortson*, 403 U.S. 431, 439, 91 S.Ct. 1970, 1974, 29 L.Ed.2d 554 (1971).

If the new party has satisfied the greater and more onerous burden of qualifying state-wide there is no legitimate reason, and certainly no statutory language to require the new party's local candidates to further satisfy the local requirements for a purely local party. If the same construction here applied to the established major parties, there could be certain areas of the state each would have difficulty establishing much local support.

■ The decision to leave Coker–Garcia and Garcia off the Boone County ballot was incorrect. This court's pronouncement after argument was incorrect, and although nothing can now be done as to these candidates, the law should be set straight for future cases.

■ The next issue relates to Libertarian candidate Harry Moffett who petitioned the court to require his name be on the ballot for the general assembly in the district he resided, the 149th district. The problem in allowing any relief is twofold. In the Petition for Formation of the Party, as required by § 115.315.2(4), the "office for which each candidate is to be nominated", must be on the petition. The petition circu-

lated by the Libertarian Party had Moffett listed as a candidate for the 144th district. Additionally, any candidate from a new political party formed through submission of petitions must also submit "a declaration of candidacy for each candidate to be nominated by the petition". Section 115.327 RSMo, 1986. Likewise, Moffett's declaration of candidacy listed incorrectly, the 144th district. The trial court was correct in denying relief on this point.

■ The Libertarian candidate for governor, Ogden Scoville, died without ever having filed a declaration of candidacy as required under § 115.327. In this suit appellants sought to mandamus the Secretary of State to substitute the name of Joan Dow for Scoville. Scoville's death occurred in the time frame of § 115.363.2(1) RSMo which allows a party nominating a candidate for the general election to select another nominee if the person nominated dies on or before nine in the morning on the second Monday prior to the election. Although dealing with presidential electors, *Manifold v. Blunt*, 863 F.2d 1368, 1375 (8th Cir.1988), cert. denied 493 U.S. 893, 110 S.Ct. 242, 107 L.Ed.2d 192 (1989), applies here. The court held these types of declarations are in the state's interest to assure the candidate is qualified to serve and voter's vote is therefore meaningful. A person who does not file such a declaration of a candidacy is not legally qualified as a candidate *Id.* Scoville then never became a candidate for governor, having failed to file the declaration of candidacy. The Libertarians had no candidate to replace. The circuit court's decision to deny Dow to replace Scoville as the new party candidate was correct. The point is denied.

The circuit court judgment is reversed as to Coker–Garcia and Garcia, but is in all other respects affirmed. Two-thirds of the costs are assessed against the appellants. No cost may be asserted against the state, *Anheuser–Busch, Inc. v. Mo. Commission on Human Rights*, 682 S.W.2d 828, 834 (Mo.App.1984).

SHANGLER, TURNAGE, ULRICH, BRECKENRIDGE, SPINDEN and SMART, JJ., concur.

## APPENDIX

### MISSOURI CONGRESSIONAL DISTRICTS

MISSOURI'S CONGRESSIONAL DISTRICTS

The Congressional district report as filed by the United States District Court for the Western District of Missouri with the Secretary of State, January 7, 1982.

| District | Description or boundary | Population |
|---|---|---|
| 1 | Parts of St. Louis City and St. Louis County | 546,208 |
| 2 | Parts of St. Charles County and St. Louis County | 546,039 |
| 3 | Jefferson County and parts of St. Louis County and St. Louis City | 546,102 |
| 4 | Counties of Barton, Bates, Benton, Camden, Cass, Cole, Henry, Hickory, Jackson (part of), Johnson, Laclede, Lafayette, Maries, Miller, Moniteau, Morgan, Pettis, Pulaski, St. Clair, Texas and Vernon | 546,637 |
| 5 | Part of Jackson County | 546,882 |
| 6 | Counties of Andrew, Atchison, Buchanan, Caldwell, Carroll, Chariton, Clay, Clinton, Cooper, Daviess, DeKalb, Gentry, Grundy, Harrison, Holt, Howard, Jackson (part of), Linn, Livingston, Mercer, Nodaway, Platte, Putnam, Ray, Saline, Schuyler, Sullivan and Worth | 546,614 |
| 7 | Counties of Barry, Cedar, Christian, Dade, Dallas, Douglas, Greene, Jasper, Lawrence, McDonald, Newton, Ozark, Polk, Stone, Taney, Webster and Wright | 545,921 |
| 8 | Counties of Bollinger, Butler, Cape Girardeau, Carter, Crawford, Dent, Dunklin, Franklin (part of), Howell, Iron, Madison, Mississippi, New Madrid, Oregon, Pemiscot, Perry, Phelps, Reynolds, Ripley, St. Francois, Ste. Genevieve, Scott, Shannon, Stoddard, Washington and Wayne | 546,112 |
| 9 | Counties of Adair, Audrain, Boone, Callaway, Clark, Franklin (part of), Gasconade, Knox, Lewis, Lincoln, Macon, Marion, Monroe, Montgomery, Osage, Pike, Ralls, Randolph, St. Charles (part of), Scotland, Shelby and Warren | 546,171 |

FENNER, Judge, dissenting.

I respectfully dissent. The Secretary of State determined that the Missouri Libertarian Party had obtained sufficient signatures to meet the requirements of section 115.315.4. However, in his determination of validity, pursuant to section 115.333, the Secretary of State determined that the ballot status of county candidates whose names appeared on the Libertarian Party petitions would have to be determined by the local election authorities based upon signatures needed, compared with valid signatures in the petition copies forwarded to the local election authorities by the Secretary of State.

The circuit court upheld the determination of the Secretary of State and found that section 115.315 does not allow new party candidates for county and district office to be placed on the ballot by virtue of the new party obtaining the requisite number of signatures for formation in the state as set forth under section 115.315.4. The trial court found that a new party is required to comply with the procedures of section 115.315.5 to place candidates for county and district office on the ballot irrespective of qualification of the new party under section 115.315.4.

Appellants argue that by qualifying as a new party under the provisions of section 115.315.4, they are thereby entitled to have candidates for district or county office who appeared on their petition determined to be valid candidates and placed on the appropriate local ballot. The statutes do not specifically address this question. Contrary to the majority opinion I find the statutory language to be ambiguous and subject to interpretation.

The cardinal rule of statutory construction requires the court to ascertain the true intention of the legislature giving reasonable interpretation in light of the legislative objective. *Collins v. Director of Revenue,* 691 S.W.2d 246, 251 (Mo. banc 1985). In interpreting statutes, courts must strive to implement the policy of the legislature and harmonize all provisions of the statute. *20th & Main Redevelopment Partnership v. Kelley,* 774 S.W.2d 139, 141 (Mo. banc 1989). The courts must also consider that when a statute directs a particular thing in a specifically presented manner, it necessarily includes the negative that it is not to be done otherwise. *Lancaster v. County of Atchison,* 352 Mo. 1039, 180 S.W.2d 706, 709 (1944). In other words, implied authority should not be construed when express authority is otherwise stated. *Id.* Furthermore, when the meaning of a statute is uncertain, appropriate weight and consideration are to be given to administrative interpretations by those charged with its execution. *Spudich v. Director of Revenue,* 745 S.W.2d 677, 680 (Mo. banc 1988).

The language of section 115.315 is unclear in regard to whether district or county candidates for a new political party are entitled to be declared valid as a result of the new party being formed for the entire state, section 115.315.4, or whether district and county candidates are required to show local support as required under section 115.315.5 regardless of the validity of state and statewide candidates.

The obvious legislative purpose in requiring signatures for the recognition of a new political party is to show a certain level of support for the formation of the party and its candidates in order to assure orderly elections that are responsive to the electorate. The interpretation advocated by appellants and adopted by the majority opinion herein allows candidates to be fielded in every county in the state when signatures are collected in one-half the Congressional districts, regardless of whether there was a single signature from the county in question or even the Congressional district involved. For example, if signatures were collected in the 1st, 2nd, 3rd, 8th and 9th Congressional districts, all on the eastern side of the state, the new party would be allowed to field a candidate for county office in any county on the western side of the state without any show of support for the party from the affected geographic area. This is not consistent with the legislative purpose of requiring a show of support for the new party and its candidates in order to assure that elections are responsive to the electorate. The fact that signa-

tures are able to be obtained from the eastern side of the state is not indicative that the citizens of, for example, Atchison County, in the extreme northwestern corner of the state, are in any way supportive of a new party candidate for any Atchison County office.

Furthermore, the statutory scheme clearly establishes a distinction between candidates for county and district office and candidates who stand for election statewide, and specifically prescribes a process for the requisite signatures in order to authorize recognition of a new party within a county or district. The statutory scheme, therefore, exhibits the legislative desire to require signatures within a given county or district before a new party is entitled to recognition within said county or district.

The majority opinion also finds the Secretary of State's interpretation of section 115.315, as adopted by the circuit court, to be unconstitutional. I disagree.

Constitutional challenges to specific provisions of a state's election laws are resolved (1) by considering the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate, (2) by identifying and evaluating the precise interests put forward by the state as justifications for the burden imposed by the rules, and (3) by determining the legitimacy and strength of each of those interests along with the extent to which those interests make it necessary to burden the plaintiff's rights. *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

The asserted injury is the restriction of liberty as assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech as protected by the First Amendment. The liberty interests affected by ballot restrictions are the rights of individuals to associate for the advancement of political beliefs and the overlapping right of qualified voters, regardless of their political persuasion, to cast their votes effectively. *Id.* at 787, 103 S.Ct. at 1569. Although these rights are fundamental, the state's important regula-

tory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions. *Id.* at 788, 103 S.Ct. at 1569.

A state has a right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot. *Id.* at 788 n. 9, 103 S.Ct. at 1570 n. 9. As a practical matter there must be substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process. *Libertarian Party v. Bond*, 764 F.2d 538, 540 (8th Cir.1985).

It is not unreasonable for the legislature to require a showing of local support for local or district-wide office as opposed to general state-wide support for officials of the state or candidates for state-wide positions. Furthermore, it is not discriminatory for the state to require local new party candidates to show a modicum of local or district-wide support in a fashion similar to the state-wide support required of candidates for state and state-wide office.

I do not believe that the cases of *Norman v. Reed*, —— U.S. ——, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992) and *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979), relied upon by the majority, are controlling. The majority opinion relies on these cases in finding the opinion of the Secretary of State herein unduly restrictive, and therefore unconstitutional.

*Norman v. Reed* and *Illinois State Board of Elections v. Socialist Workers Party* involved challenges to Illinois election laws. The Illinois Election Code required new political parties to obtain the signatures of 25,000 qualified voters in order to field candidates for state-wide office. However, to field candidates in a political subdivision, the new party had to obtain signatures of a number of qualified voters equalling 5 percent of the number who voted at the previous election for offices of the subdivision. *Illinois State Board of Elections*, 440 U.S. at 173–75, 99 S.Ct. at 985–86. Thus, a new party had to gather more signatures to run a candidate in the

City of Chicago than to run a candidate statewide. The Court concluded it was unconstitutional to require a new party for a political subdivision to collect more signatures than the number required to run state-wide candidates. *Id.* 440 U.S. at 185, 99 S.Ct. at 991.

Section 115.315.5 does not impose the same requirement on a new political party as did the Illinois statute. In Missouri, a new party that seeks to run candidates in any district or county must obtain signatures of a number of registered voters in the district or county equal to at least two percent of the total number of voters who voted at the last election for candidates for the office being sought. It has not been shown that there is any district or county for which the signature requirement is more onerous than the requirement for state-wide candidates set out in Section 115.315.4.

*Norman v. Reed* and *Illinois State Board of Elections v. Socialist Workers Party* are not applicable to the case at bar. I do not believe that section 115.315 is unconstitutional as interpreted by the Secretary of State.

I concur with the majority opinion as to candidates Harry Moffett and Ogden Scoville. However, I would also affirm the judgment of the trial court denying recognition to Libertarian Party candidates Laura Coker–Garcia and Anthony Garcia.

KENNEDY, BERREY and HANNA, JJ., concur.