**Wanda HALBERT**

v.

**The SHELBY COUNTY ELECTION COMMISSION, et al.**

Supreme Court of Tennessee, at Jackson.

Nov. 6, 2000.

Mimi Phillips, Memphis, TN, Memphis, for appellant, Wanda Halbert.

Robert L.J. Spence, Jr., Memphis, for appellees, Shelby County Election Commission and individually named commissioners.

Allan J. Wade, for appellee, Michael A. Hooks, Jr.; Ernest G. Kelly, Jr., and Board of Education of the Memphis City Schools.

## OPINION

BIRCH, J., delivered the opinion of the court, in which ANDERSON, C.J., HOLDER and BARKER, JJ., joined. DROWOTA, J., not participating.

This matter is before us on direct appeal from the Chancery Court of Shelby County pursuant to Tenn.Code Ann. § 2–17–116. At issue is Michael A. Hooks, Jr.'s eligibility to be elected to and serve on the Board of Education of the Memphis City Schools (School Board). His eligibility hinges on the meaning of the term "resident voter" as used in the School Board's charter. Wanda Halbert, the appellant, contends that Hooks was not a "resident voter" and is thus ineligible to serve on the School Board. The trial court found that Hooks was, indeed, a "resident voter" and eligible to serve as a member of the School Board. The judgment of the trial court is, therefore, affirmed, and this cause is dismissed.

### I. Facts and Procedural History

The appellant, Wanda Halbert, and the appellee, Michael A. Hooks, Jr.,[1] were candidates for a seat on the Board of Education of the Memphis City Schools, to be filled by election August 6, 1998.[2] Shortly before the election, Halbert learned that Hooks had registered to vote in Shelby County on June 16, 1997, and had never voted. Based on these facts, Halbert filed a petition in the Chancery Court challenging Hooks' eligibility to serve on the School Board and seeking declaratory and injunctive relief. The trial court denied the request for a temporary restraining order. Hooks received almost fifty-six

percent of the votes cast on August 6, 1998, and a majority of the votes cast in the general election held November 3, 1998.

Halbert contends that the August 6, 1998, and November 3, 1998, elections are void because Hooks was not eligible to serve on the School Board. She seeks a new election. *See Forbes v. Bell,* 816 S.W.2d 716, 719–24 (Tenn.1991); *Emery v. Robertson Co. Election Com'n,* 586 S.W.2d 103, 109 (Tenn.1979). In response, Hooks insists that he has complied with all residency and eligibility requirements or, in the alternative, if the School Board's charter establishes a durational registration requirement, such requirement infringes on his right to hold public office in violation of the Equal Protection ·Clause of the Fourteenth Amendment to the United States Constitution. *Cf. Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Thus, the essential issue before us is whether Hooks is eligible to serve as a member of the Board of Education of the Memphis City Schools. The resolution of this issue hinges on the meaning of the term "resident voter" as used in the School Board's charter.

We are of the opinion that the term "resident voter" neither requires nor includes that the subject person either register or vote. Thus, we conclude that Hooks met all eligibility requirements for service on the School Board. We affirm the judgment of the Chancery Court and dismiss this cause of action.

### II. Standard of Review

The issue presented is a question of law to be reviewed de novo with no presumption of correctness given the lower court's judgment. *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 924 (Tenn.1998).

---

1. Other named party/appellees are The Shelby County Election Commission; Myra Stiles, Commissioner; O.C. Pleasant, Jr., Commissioner; David H. Lillard, Commissioner; Yvonne B. Acey, Commissioner; Richard Holden, Commissioner; and The Board of Education of Memphis City Schools.

2. Subject to the general election.

■ In construing legislative enactments, the principal goals are to ascertain the legislative intent and give it effect without unduly restricting or expanding its coverage beyond its limited scope. *Austin v. Memphis Pub. Co.*, 655 S.W.2d 146, 148–49 (Tenn.1983). That intent is primarily discerned from the language of the enactment. *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn.1998). "Courts are restricted to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." *Id.* Where different meanings are possible from the language, an ambiguity exists. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995).

### III. Analysis

The Memphis City Schools is a special school district whose charter comprises a series of Private Acts of the Tennessee General Assembly, the earliest of which was enacted in 1869. The act relevant here took effect in 1970.[3] Essentially, it adds to the eligibility requirements for service on the School Board by imposing a five-year durational-residency requirement:

> No person shall be elected, or appointed as hereinafter provided, as a member of the Board of Education of the Memphis City Schools unless he or she shall have been a *resident voter* and taxpayer of the City of Memphis for not less than five (5) years preceding his or her election or appointment. . . .

*Id.* (emphasis added).

The appellant concedes that Hooks has at all times been a resident of the City of Memphis. That Hooks has been eligible to vote for more than five years preceding the election is conceded also. The appellant's sole contention, then, is that the term "resident voter" in the charter requires that a candidate *actually register and vote* five years prior to the election as

distinguished from merely being eligible to do so. Though eligible much earlier, Hooks registered to vote approximately one year before the election. Thus, Hooks' eligibility to serve hinges solely on the construction of Chapter 340 of the 1970 Private Acts.

■ To resolve this matter, we must construe the term "resident voter." While the term is not defined in the Act, the residence requirements are not contested, so our focus is on the word "voter" as used in the term "resident voter." The word "voter" is, however, undefined in context. Moreover, the word has several possible meanings as is noted by Black's Law Dictionary:

> The word has two meanings—a person who performs the act of voting, and a person who has the qualifications entitling him to vote. Its meaning depends on the connections in which it is used, and is not always equivalent to electors. In a limited sense a voter is a person having the legal right to vote, sometimes called a legal voter.

Black's Law Dictionary 1576 (6th ed.1990). Thus, we must treat it as ambiguous and look to sources beyond the Act for its meaning. In so doing, we find our decision in *Trammell v. Griffin*[4] persuasive.

In *Trammell*, we were asked to determine whether the word "voter," as used in a city charter, meant "a person having the qualifications entitling him to vote, or . . . a person who has registered and thus lawfully evidenced his right to vote." *Id.* We concluded that "[a]n inspection of our election and registration laws demonstrates that the word 'voter' is used therein in the sense of one who is qualified to vote, and not in the sense of a registered voter." *Id.* at 727. In reaching this conclusion, we relied on the principle that registration laws do not pertain to the "qualifications" that citizens are required to possess before

---

3. 1970 Tenn.Private Acts ch. 340, § 2.

4. 141 Tenn. 139, 207 S.W. 726 (1918).

being "entitled to vote" but rather to the regulation of the exercise of that right.

Our decision in *Trammell* is consistent with decisions from other jurisdictions. For example, in *Gilbert v. Breithaupt,* the Nevada Supreme Court held that registration was not required in order to constitute the appellant as a "qualified voter." 60 Nev. 162, 104 P.2d 183 (1940). Similarly, in *In Re Ray,* the Circuit Court of New Jersey determined that a citizen of New Jersey was a "legal voter" despite not having registered. 26 N.J. Misc. 56, 56 A.2d 761 (1947). In reaching this conclusion, the court reasoned that:

> [t]he right to hold office is a valuable one and its exercise should not be declared prohibited or curtailed except by plain provisions of law ... Statutes imposing disqualifications are to be construed strictly, while those declaring qualifications are to receive a liberal construction. In consequence, ambiguities are to be resolved in favor of eligibility to office.... The purpose of requiring voters to register permanently is to protect the purity of the ballot box, by ascertaining before the vote is cast whether or not such persons possess the qualifications to vote and by preventing impersonations thereafter at the polls.

*Id.* at 763 (all citations omitted). The court continued:

> [i]n the present case the incumbent Ray was elected by a vote of the people. He should not be prevented from taking his seat as councilman, unless clearly ineligible under some constitutional or statutory provision. The language of R.S.

19:23–15, N.J.S.A., in requiring a person accepting the endorsement for nomination to stand for office to certify that he is a legal voter, is not sufficiently explicit to show a legislative intent to deprive a person otherwise qualified from the right to hold a public office because he is not a registered voter. It is my opinion that the legislature, in employing the term 'legal voter' in the above section, meant to refer to those qualities which must exist, in sum, to make of him a voter, as conferring on him the right to be placed among the class of persons which the constitution of our state creates and declares voters. When the legislature passed the permanent registration law, it is my belief it did not intend to alter the qualifications of one seeking public office. The latter law refers to the idea of a recording of the fact that a person has given proper evidence of the existence of the qualities which constitute him a legal voter. The election laws were never intended to set forth qualifications of office holders.

*Id.* at 765 (citations omitted).

We hold, therefore, that the term "resident voter" as used in the School Board's charter provision establishing the eligibility requirements for service on the Board of Education of the Memphis City Schools requires the candidate to possess the legal qualifications which would entitle him or her to vote in the election if registered. We hold also that registration laws do not affect the qualifications for voting; they merely regulate how "voters" may exercise this right. Thus, registration laws have no application here.[5]

---

5. The term "registered voter" is defined as "a qualified voter who has fulfilled the registration requirements of this title." Tenn.Code Ann. § 2–1–104(a)(23)(1994). "Qualified voter" is defined as a United States citizen who is 18 years or older and who is a resident of Tennessee. Tenn.Code Ann. § 2–2–102 (1994). Halbert insists that the prior version of this section, which defined "qualified voter" as "a resident of the State for a period of at least twenty days prior to offering himself for registration," is applicable. Tenn.Code Ann. § 2–2–102 (1985). We find that regis-

tration serves the regulatory function of verifying a citizen's qualifications to vote; it is irrelevant to the determination of a citizens' qualifications to vote. Nor do we find persuasive the proposition that an election in 1998 would be governed by a previously deleted more restrictive version of the election laws.

Halbert also contends that the 1978 amendment to the Tennessee Constitution, art. IV, § 1, which added the phrase "being duly registered in the county of residence" to the

## IV. Conclusion

As discussed above, we hold that Hooks is a "resident voter" and is thus eligible to serve as a member of the School Board. We, therefore, do not reach the constitutional issues raised by Hooks.[6] Accordingly, the judgment of the trial court is affirmed, and this cause is dismissed.

Costs are taxed to the appellant, Wanda Halbert.

description of those citizens entitled to vote, "creates a constitutional mandate that 'registration' be a 'qualification' for voting." We find Halbert's contention without merit. As noted above, registration laws regulate the act of voting. Such laws, however, do not affect the qualifications a citizen is required to possess before being entitled to vote. Thus, the constitutional amendment adding the phrase referring to registration does not address the underlying qualifications required of a citizen. Rather, the amendment serves to regulate and protect the integrity of elections and the election process.

6. "[U]nder Tennessee law, courts do not decide constitutional questions unless resolution is absolutely necessary for determination of the case and the rights of the parties." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995). Furthermore, when reviewing legislative enactments challenged as unconstitutional, "we are required to indulge every presumption and resolve every doubt in favor of the constitutionality of the statute." *Petition of Burson*, 909 S.W.2d 768, 775 (Tenn.1995); *Shelby Co. Election Com'n v. Turner*, 755 S.W.2d 774, 777 (Tenn.1988). However, several courts have found that a durational registration requirement for candidacy is unconstitutional. *See Board of Sup'rs of Elections v. Goodsell*, 284 Md. 279, 396 A.2d 1033, 1039–40 (1979) (and cases cited therein); *Treiman v. Malmquist*, 342 So.2d 972, 976 (Fla.1977). We, however, do not need to reach that issue.