**Garry D. LEWIS, Respondent.**

v.

**Roger M. GIBBONS, Appellant,**

**State of Missouri, Intervenor.**

**No. SC 84651.**

Supreme Court of Missouri,
En Banc.

Aug. 5, 2002.

---

Roger M. Gibbons, Osage Beach, for Appellant.

Keith W. Hicklin, Platte City, Kimberly J. Nicoli, Troy, for Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, Karen P. Hess, Assistant Attorney General, Jefferson City, for Intervenor.

PER CURIAM.

Roger M. Gibbons and Garry D. Lewis filed as candidates for associate circuit judge for Knox County. Lewis challenged Gibbons' right to be on the ballot on the basis that Gibbons did not meet the one-year residency requirement of section 478.320.6.[1] After hearing, the trial court entered judgment for Lewis. Gibbons asserts that he meets the statutory requirement and, if not, that the requirement is invalid. This Court has jurisdiction. *Mo. Const. article V, section 3.*[2] Finding no error as to whether Gibbons meets the statutory requirement and finding that the statute is valid, the judgment is affirmed.

■ Gibbons moved to Knox County prior to his first birthday. He attended school in the county and worked in the county one year after graduating from high school. He then attended college in Columbia, Missouri, and law school in Kansas City, Missouri. Following graduation from law school in 1991, Gibbons worked for various law firms in the Kansas City area. In 1995, he relocated to the Lake of the Ozarks area. He owned a duplex, in which he lived, in Camden County and was a part-time prosecuting attorney in Miller County. His parents and siblings continued to live in Knox County, where he visited on holidays and weekends.

In 2001, Gibbons decided to stand for election as the associate circuit judge of Knox County. On October 20, 2001, he rented a house in Knox County on a month-to-month basis. He did not move into the house, place any furniture or clothing in the house, eat any meals in the house, stay overnight in the house, have any guests in the house, or have any telephone service to the house. On or about November 12, 2001, the landlord indicated he had made arrangements to sell the house and refunded the payment Gibbons had made. Gibbons then moved to a house owned by his mother and aunts. He does not pay rent for this house, but he does maintain it. Gibbons continues his employment in Miller County and maintains a law office and the duplex in Camden County.

Section 478.320.6 states:

6. No person shall be elected as an associate circuit judge unless he has resided in the county for which he is to be elected at least one year prior to the date of his election; provided that, a

---

1. Except as otherwise noted, all statutory references are to RSMo 2000. Section 115.526 permits "[a]ny candidate for nomination to an office at a primary election [to] challenge the ... qualifications of any other candidate for nomination to the same office to seek or hold such office...."

2. The appeal, originally filed with this Court, was transferred July 17, 2002, to the court of appeals, which ordered an expedited schedule. On July 22, that court retransferred the case to this Court. Gibbons' brief was filed July 23; Lewis' brief was filed July 29; and the State of Missouri's brief in support of Lewis was filed August 1, the date the attorney general sought and was granted leave to intervene.

person who is appointed by the governor to fill a vacancy may file for election and be elected notwithstanding the provisions of this subsection.

The parties agree that the date of the relevant election is November 5, 2002. Gibbons contends he meets the requirement of section 478.320.6 because he has lived in Knox County one year prior to the election; i.e., the period prior to going to college. Lewis argued, and the trial court apparently agreed, that the relevant period was the one year immediately prior to the election.

Gibbons' statutory construction argument is that the words "at least one year prior to the date of his election" are satisfied by any one-year period prior to the election, however remote. He invokes the language of certain other residency statutes that are more specific. For example, he argues that if the legislature had intended to require that candidates reside in a county for at least one year "immediately" or "next" or "just" prior to the election, it could have done so expressly as it did in those particular statutes.[3] He also notes that the Missouri Constitution often displays this type of specificity.[4] The dissenting opinion also argues that this Court should construe the residency requirement narrowly, to refer to any cumulative year of living in a county at any time, because it deals with voting rights and, so, should be liberally construed.

But, the arguments made by Gibbons and the dissenting opinion fail to consider a number of other residency statutes that do not include such specific language. For example, section 64.350 requires that county planning and recreation commissioners be residents "for a period of five years prior to" the date of their appointment. Section 99.050 requires that housing authority commissioners reside in the city "for five years prior to" appointment. Section 226.030 requires that state highway commissioners shall be taxpayers and residents of the state "for at least five years prior to" appointment. Section 249.1112.1, RSMo Supp.2001, requires that sewer district board members reside in the district "for one whole year prior to" appointment. Section 262.217 requires that state fair commissioners shall be residents of the state "for five years prior to" appointment. Section 321.130.1 requires that

---

**3.** Section 51.050 (county clerk shall have resided "within the county for which he is elected six months just prior to his election"); section 55.060 (county auditor shall have resided "within the county for which he is elected or appointed for three months immediately preceding the election or his appointment"); section 56.010 (prosecuting attorney shall have been a "bona fide resident of the county in which he seeks election for twelve months next preceding the date of the general election"); section 57.010 (sheriff "shall have resided in said county for more than one whole year next before filing for said office"); section 58.030 (coroner shall have resided "within the county for which he is elected, six months next preceding the election").

**4.** Mo. Const. art. IV, section 3 ("governor shall be ... a resident of this state for at least ten years next before election"); Mo. Const.

art. IV, section 10 (lieutenant governor shall have same qualifications as the governor); Mo. Const. art. III, section 6 (state "senator shall be thirty years of age, and next before the day of his election shall have been ... a resident of the district which he is chosen to represent for one year ..."); Mo. Const. art. III, section 4 (state "representative shall be twenty-four years of age, and next before the day of his election shall have been ... a resident of the county or district which he is chosen to represent for one year ..."); Mo. Const. art. V, section 21 ("judges of the supreme court and court of appeals shall have been ... qualified voters of the state for nine years next preceding their selection ... Circuit judges shall have been ... residents of the state three years next preceding their selection ... and resident of the circuit for at least one year ...").

fire district board members be a "voter of the district at least two years prior to" his or her election or appointment. Section 331.090.1 requires that state chiropractic board members shall have practiced chiropractic continuously "for a period of at least two years prior to" appointment. Section 339.120.1 requires that Missouri real estate commissioners reside in the state "at least one year prior to" appointment. Section 339.507.1 requires that members of the Missouri real estate appraisers commission be residents and registered voters of the state "for a period of one year prior to" appointment. Section 542.190 requires that special deputies, marshals and police officers be residents "for at least three years prior to" appointment. And, finally, in a slightly different context, section 36.050.2 requires that no personnel advisory board member "during the member's term of office, or for at least one year prior thereto, shall be a member of any local, state, or national committee of a political party . . ."

 Although one might wish that the legislature had drafted its statutes with the absolute uniformity, clarity, and precision of an English grammar teacher, it obviously did not do so. It is not our place to require that the legislature draft its statutes with that degree of precision.[5] Instead, the primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning. *Wolff Shoe Co. v. Director of*

*Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). The construction of statutes is not to be hyper-technical, but instead is to be "reasonable and logical and [to] give meaning to the statutes." *State ex rel. Rhodes v. Crouch*, 621 S.W.2d 47, 49 (Mo. banc 1981). Although the legislature has chosen to write these various residency statutes in slightly different ways and with slightly different language, their plain meaning, as in the statute now before us, is clear.[6] Indeed, Gibbons does not cite to any residency requirement, in Missouri or elsewhere, that has ever been construed to require residency during any period other than that immediately preceding the office or action at issue, whether or not the statute used the term "prior." This is because, quite simply, the purpose of the word "prior," read within the context of these statutes, includes within it the concept of immediacy, whether stated expressly or not. This is in accord with case law construing the word "prior" in other situations. *Endicott v. Display Technologies, Inc.*, 77 S.W.3d 612 (Mo. banc 2002); *Owens v. Norb Hackmann, Inc.*, 979 S.W.2d 941, 944 (Mo.App.1998)("a prior employer" was held to mean the immediate prior employer and not "any" prior employer). This plain meaning of the word is so understood that the argument Gibbons now makes was not even attempted in *Chowning v. Magness*, 792 S.W.2d 438 (Mo.App.1990)(courts and parties assumed statute referred to 12 months immediately prior to election). *See also State ex rel. Nixon v. Jewell*, 70 S.W.3d 465, 466 (Mo.App.2001); *Trusler v. Tate*,

---

5. To achieve the degree of specificity Gibbons seeks even he would have to insert words into the statute as follows: "No person shall be elected . . . unless he has resided in the county for which he is to be elected at least one year [*at any time* ] prior to the date of his election. . . ."

6. *See, e.g., State ex rel. SSM Health Care v. Neill*, 78 S.W.3d 140 (Mo. banc 2002) ("The variance in language of sections 508.050 and 508.060 itself shows that the legislature has not limited itself t a single method of designating when a special venue statute is to provide the exclusive method of determining venue in cases involving multiple defendants.")

941 S.W.2d 794, 797 and 799 (Mo.App. 1997).

The purpose of residency statutes is to ensure that governmental officials are sufficiently connected to their constituents to serve them with sensitivity and understanding. To adopt the reading of this statute proposed by Gibbons would permit a person to live in a county between the age of birth and 18 months, to leave the county and to return 50 or 60 years later and be eligible to run. Such an interpretation is obviously inconsistent with the intention of the legislature, unreasonable and absurd. "Construction of statutes should avoid unreasonable or absurd results." *Murray v. Missouri Highway and Transportation Commission*, 37 S.W.3d 228, 233 (Mo. banc 2001).

If the 12 months prior to the election is the relevant period, Gibbons contends he meets this requirement. As noted in *Chowning v. Magness*, at 439, this case was tried without a jury and is, therefore, reviewable under Rule 73.01. That review is governed by the constraints imposed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* In considering whether the judgment of the trial court is "against the weight of the evidence," this Court may exercise its power to set aside the judgment of the trial court only with caution and only if it possesses a firm belief that the judgment is wrong. *Id.* In undertaking this review, this Court is mindful of the opportunity of the trial court to have judged the credibility of the witnesses and gives due regard thereto. *Rule 73.01(c)(2)*. The trial court's finding that Gibbons was not a resident "one year prior to the date of his election" is supported by substantial evidence and is not against the weight of the evidence. No error of law appears.

Gibbons asserts that if section 478.320.6 is limited to the 12 months preceding the election and if he did not meet the requirement, then the statute is in violation of the state and federal constitutions because: (1) it denies equal protection as between recent residents and those appointed by the governor to office and (2) it infringes upon the rights of voters to participate in an election. As to the equal protection challenge, the statute serves a rational purpose. As to the rights of the voters, this claim was rejected in *State ex rel. Gralike v. Walsh*, 483 S.W.2d 70 (Mo. banc 1972), with respect to the one year residency requirement for members of the state legislature, and the Court concludes that *Gralike* is still valid.

Statutes are presumed to be constitutional. Because of the presumption of constitutionality, the burden to prove a statute unconstitutional is upon the party bringing the challenge. This Court will not invalidate a statute "unless it clearly and undoubtedly contravenes the constitution and plainly and palpably affronts fundamental law embodied in the constitution." *In re: Marriage of Kohring*, 999 S.W.2d 228, 231 (Mo. banc 1999).

With respect to candidate qualification statutes, the Supreme Court of the United States has noted in *Clements v. Fashing*, 457 U.S. 957, 962–64, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (citations omitted):

> The Equal Protection Clause allows the States considerable leeway to enact legislation that may appear to affect similarly situated people differently. Legislatures are ordinarily assumed to have acted constitutionally. Under traditional equal protection principles, dis-

tinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them. We have departed from traditional equal protection principles only when the challenged statute places burdens upon "suspect classes" of persons or on a constitutional right that is deemed to be "fundamental."

\* \* \*

Far from recognizing candidacy as a "fundamental right," we have held that the existence of barriers to a candidate's access to the ballot "does not of itself compel close scrutiny." "In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." In assessing challenges to state election laws that restrict access to the ballot, this Court has not formulated a "litmus-paper test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause." Decision in this area of constitutional adjudication is a matter of degree, and involves a consideration of the facts and circumstances behind the law, the interests the State seeks to protect by placing restrictions on candidacy, and the nature of the interests of those who may be burdened by the restrictions.

In counties with a single associate circuit judge, such as Knox County, section 478.320.6 applies to all candidates seeking election as an associate circuit judge except for those appointed by the governor within a year of the date of election.[7] As Gibbon concedes, in a small county such as Knox, "it is unlikely that [a governor's] appointee would ever accept the appointment since the residency requirement of [section] 478.320.6 would exclude him from seeking election for the office." This is a sufficient rational basis for the exemption of such appointees from the residency requirement.

Moreover, a durational residency requirement is not in violation of the federal or state constitution. *Gralike v. Walsh; Chimento v. Stark,* 353 F.Supp. 1211 (D.N.H.1973)(three-judge panel), *mem. aff'd, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39(1973).*

The judgment is affirmed.

LIMBAUGH, C.J., BENTON, LAURA DENVIR STITH, and PRICE, JJ., concur.

WHITE, J., dissents in separate opinion filed.

TEITELMAN, J., concurs in the opinion of WHITE, J.

WOLFF, J., dissents in separate opinion filed.

WHITE and TEITELMAN, JJ., concur in the opinion of WOLFF, J.

RONNIE L. WHITE, *Judge.*

### DISSENTING OPINION

I concur fully in the dissenting opinion authored by Judge Wolff. I write separately only to note two additional concerns I have with the principal opinion. First, the majority's interpretation of the word "prior" is inadequate and unconvincing. Second, and more importantly, I have deep reservations about the majority's lacklus-

---

7. Mo. Const. art. V, sec. 16 provides that each county shall have at least one *resident* associ-

ate circuit judge.

ter treatment of Gibbons' Equal Protection claim.[1]

While the majority states that "the purpose of the word 'prior,' read within the context of these statutes, includes within it the concept of immediacy, whether stated expressly or not," the opinion curiously dodges a discussion as to the actual definition of the term "prior" and ignores the many examples where our legislature clearly chose to define other residency requirements with specific terms connoting immediacy. It is also noteworthy that the only precedent the majority cites in support of its interpretation of its *implied* meaning of the word "prior" are two employment law cases. Further, the failure of the parties in the three cited election-contest cases to raise the statutory-construction argument does not support the majority's outcome-oriented decision.

The plain and ordinary meaning of the word "prior" is simply "preceding in time or order," or "preceding temporarily, causally, or psychologically."[2] As Judge Wolff astutely noted, our legislature, on multiple occasions, has chosen to add the immediacy element to durational residency requirements. In this instance, our legislature did not add such an element, and it is not the province of this Court to rewrite the statute for duly elected representatives.

Another, perhaps more important concern, is the majority's cursory conclusion that this case merits mere rational-basis review. It is true that candidacy is not always a fundamental right deserving heightened scrutiny. "Unfortunately, the right of a person to seek public office is one of the nebulous areas where strict scrutiny is sometimes applied and sometimes not."[3]

Given that the "nebulous" nature of the level of analysis can lead to drastically different outcomes, the lack of careful treatment is curious. In this case, only two candidates seek an associate judgeship. The incumbent was not a resident of Knox County the year prior to becoming judge. The challenger was arguably (and in the opinion of all dissenters, unquestionably) a resident one year before he sought the judgeship. The two candidates—two separate classes—thus are treated differently under Missouri law.

In a challenge to a state election law, a court must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments.[4] The court then must:

> identify and evaluate the precise interests put forth by the State as justifications for the burden imposed by its rule.

---

1. A third potential problem is that it is questionable whether the claim was proper, given that Lewis sued only Gibbons and not the authority responsible for placing his name on the ballot.

2. American Heritage Dictionary 985 (2nd Col. Ed.1991); Webster's Third International Dictionary 1804 (1961).

3. *Labor's Educational and Political Club–Independent v. Danforth*, 561 S.W.2d 339, 347 (Mo. banc 1977).

4. *Anderson v. Celebreeze*, 406 U.S. 780, 789 (1983). *See also e.g. Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972);

*State ex rel. Coker–Garcia v. Blunt*, 849 S.W.2d 81 (Mo.App.1993)(where case involves right of access to ballot, court reviews under "strict scrutiny"); *Halbert v. Shelby County Election Comm'n*, 31 S.W.3d 246, 249 (Tenn.2000)("The right to hold office is a valuable one and its exercise should not be declared prohibited or curtailed except by plain provisions of law.... Statutes imposing disqualifications are to be construed strictly, while those declaring qualifications are to receive a liberal construction. In consequence, ambiguities are to be resolved in favor of eligibility to office ...").

In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all of these factors is the reviewing court in a position to decide whether a challenged provision is constitutional.[5]

The majority opinion is bereft of the careful analyses contemplated by the U.S. Supreme Court. Instead of determining the strength and validity of the State's justifications for the statutes, the majority merely quotes Gibbons' supposition that few governor's appointees would accept an appointment to fill a vacancy. It is the opinion of this author that most qualified attorneys would accept the opportunity to be a judge, even knowing that opportunity would be short-lived. Nonetheless, by failing to determine and weigh the State's justifications against the character and magnitude of the injury, the majority opinion ignores constitutional, precedential mandates.[6] Even assuming, *arguendo,* that rational-basis analysis is applicable, the majority's analysis of the Equal Protection claim is woefully deficient.

In sum, the principal opinion engages in statutory revision in plain opposition to this country's core democratic principles, namely the right to participate in the elective process. By denying Gibbons his right to be on the ballot, the principal opinion allows Lewis to run unopposed. Because of the faulty interpretation of

"prior" and because of the dangerous lack of consideration of constitutional principles, I dissent.

MICHAEL A. WOLFF, Judge.

### DISSENTING OPINION

Thirty years ago this Court generously interpreted a durational residency requirement to promote access to the ballot. *State ex rel. King v. Walsh,* 484 S.W.2d 641 (Mo. banc 1972), involved an extensive discussion of the facts relating to the residency of a candidate for governor. In this case, Gibbons, the disqualified candidate, sought to run for the office of associate circuit judge.

Unlike *State ex rel. King v. Walsh,* this case does not call for examination of the facts because we have the trial court's finding that Gibbons was not a resident for one year immediately prior to the November 2002 general election. On this factual issue, I agree that we should defer to the trial court. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

Gibbons could, however, qualify for the ballot in the Democratic primary against the incumbent, Lewis, if we read the statute as written and not try to improve on the legislature's word choices.

In considering the one-year residency requirement of section 478.320.6, *State ex rel. King v. Walsh* is a reminder that, in a democratic system, the opportunity to vote and to run for public office are important interests. *Bullock v. Carter,* 405 U.S. 134,

---

**5.** *Id.*

**6.** In its intervening brief, the State treats the Equal Protection claim as a residency requirement against all candidates. In doing so, the State asserts the following interests in support of the statute: 1) it requires candidates to be familiar with the local area; 2) it *increases voter familiarity with candidates,* 3) it discourages frivolous candidates. However-

er, although these interests are asserted against all challenging candidates, they are not asserted against a judge appointed to fill a short vacancy who then chooses to run for retention. As noted *supra,* the Equal Protection analysis is necessary because some candidates are subjected to the residency requirement and some are not.

143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *see also Kramer v. Union Free School District,* 395 U.S. 621, 626–628, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). If a statute limits the opportunity to run for office, its limitations should be narrowly confined to the precise statutory language in order to promote access to the ballot. *See also State ex rel. Upchurch v. Blunt,* 810 S.W.2d 515 (Mo. banc 1991).

The generous spirit evident in *State ex rel. King v. Walsh* would be appropriate here in our reading of the statute.

Article V, section 21, approved by the voters in 1976, allows the General Assembly, by law, to place qualifications on those who would run for the office of associate circuit judge. The constitutional provision contains a residency requirement but does not contain a durational residency requirement. Section 478.320.6, enacted in 1985, states:

> No person shall be elected as an associate circuit judge unless he has resided in the county for which he is to be elected at least one year prior to the date of his election; provided that, a person who is appointed by the governor

to fill a vacancy may file for election and be elected notwithstanding the provisions of this subsection.

Lewis argued, and the trial court and the majority of this Court agree, that the relevant period was the one year immediately prior to the election and that the previous period of residence in the county was irrelevant.

Gibbons contends he meets the requirement of section 478.320.6 because he has lived in Knox County one year prior to the election; i.e., the period prior to going to college. There is no dispute that Gibbons was a resident of Knox County from 1964 to 1983. When he went to college in 1983, he said he remained a resident until 1991, when he completed law school.

Section 478.320.6 is clear as written. It requires that Gibbons be a resident of Knox County "at least one year prior to the date of his election...." The statute does not say "immediately prior to" or "next preceding." As the words of section 478.320.6 are written, any residency of at least one year's duration prior to the election will suffice. Where the legislature chooses to impose the requirement that residency must be immediately prior, it usually has done so explicitly.[1] Courts

---

1. *See, e.g.,* section *51.050* (county clerk shall have resided "within the county for which he is elected six months just prior to his election"); *section 55.060* (county auditor shall have resided "within the county for which he is elected or appointed for three months immediately preceding the election or his appointment"); *section 56.010* (sheriff "shall have resided in said county for more than one whole year next before filing for said office"); *section 58.030* (coroner shall have resided "within the county for which he is elected, six months next preceding the election"); *section 452.305* (party to a dissolution action must be a resident of the state "for ninety days next preceding the commencement of the proceeding ..."). *See also article IV, section 3* ("governor shall be ... a resident of this state for at least ten years next before election"); *arti-* cle *IV, section 10* (lieutenant governor shall have the same qualifications as the governor); *article IV, section 13* (state auditor shall be a resident of this state for at least ten years next before election); *article III, section 6* (state "senator shall be thirty years of age, and next before the day of his election shall have been ... a resident of the district which he is chosen to represent for one year ..."); *article III, section 4* (state "representative shall be twenty-four years of age, and next before the day of his election shall have been ... a resident of the county or district which he is chosen to represent for one year ..."); *article V, section 21* ("judges of the supreme court and court of appeals shall have been ... qualified voters of the state for nine years next preceding their selection ... circuit judges

may read "immediately" into the phrase "prior to" in some contexts.[2] We should decline to so here because a statutory restriction on the opportunity to run for this office ought to be explicitly stated.

It may be that the legislature meant to impose a requirement of one year's residency immediately prior to election for associate circuit judges. In construing statutes, courts search for legislative intent, as the majority does here. *See also J.S. v. Beaird,* 28 S.W.3d 875, 876 (Mo. banc 2000). However, the majority's search for legislative intent results in adding words—"immediately" or "next preceding"—that are not in the statute. In the final analysis, especially where an important interest such as access to the ballot is concerned, courts should be bound by what the statute says, not by what the lawmakers might have been thinking. *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002)(No. SC84192, decided June 25, 2002).

The majority asserts that the reading of the statute advocated here is absurd because it would allow any one-year period of residency to be counted. The point is not without irony. Incumbent-protection laws, such as the one at issue here, often are inherently absurd. If the reading that I advocate seems absurd, it may be precisely what this statute deserves.

In any event, the statute simply requires that Gibbons be a resident of Knox County at least one year prior to the election. He

has met that requirement. I therefore dissent.

---

shall have been ... residents of the state three years next preceding their selection, ... and residents of the circuit for at least one year ..."). *But see Chowning v. Magness,* 792 S.W.2d 438 (Mo.App.1990) (courts and parties assumed statute referred to 12 months immediately prior to the election.).

2. For example, in workers compensation cases, a "prior" employer is interpreted, with-

in the context of that statutory scheme, to mean the most recent employer. *See Owens v. Norb Hackmann,* 979 S.W.2d 941 (Mo.App. 1998), and *Endicott v. Display Technologies,* 77 S.W.3d 612 (Mo. banc 2002). That interpretation is consistent with the purpose of the workers' compensation law to provide injured workers with a simple means of obtaining compensation.